565 So.2d 381 (1990)
STATE of Florida, Appellant,
v.
Edward Leonard WALTON, Appellee.
No. 88-2485.
District Court of Appeal of Florida, Fifth District.
August 9, 1990.
*382 Robert A. Butterworth, Atty. Gen., Tallahassee, and Bonnie Jean Parrish, Asst. Atty. Gen., Daytona Beach, for appellant.
Ernon N. Sidaway III, Ft. Pierce, for appellee.
W. SHARP, Judge.
The state appeals from the trial court's order suppressing evidence of contraband found in Walton's blue suitcase in the trunk of a car driven by Kemp, a codefendant. The trial court ruled that Kemp's consent to search the trunk of the car was voluntary, but that he could not give valid consent to search Walton's suitcase. We disagree under the circumstances established by this record.
The record of the hearing on the suppression motions (both Walton's and Kemp's) establishes without dispute that Kemp was driving a borrowed (from his girlfriend) 1979 two-door Toyota, northbound on I-95. Deputy Harting "clocked" him exceeding the 55 mile per hour speed limit in Volusia County by some 10 miles per hour. Deputy Thomas waived Kemp down and Deputy Harting pulled up behind Kemp's Toyota in his patrol car.
Deputy Harting ran a license check on Kemp and learned Kemp was driving with a suspended Florida license. He also ran a check on Walton, the passenger in Kemp's car, and was told (inaccurately he later learned) that Walton's North Carolina license was valid. He cited Kemp for driving with a suspended license and told both Kemp and Walton that Walton would have to drive the balance of their trip. He warned Kemp about exceeding the posted speed limit.
Deputy Harting asked Kemp if he was carrying any contraband in the car. Kemp said "no." Harting asked Kemp's permission to search the car. Kemp agreed. Harting had Kemp read and sign a Voluntary Consent to Search form, which included a search of the vehicle and all of its contents. Harting also testified he told Kemp that he was free to leave and that he did not have to agree to the search.
Deputy Thomas did the actual search. Harting stood with Kemp and Walton beside his patrol car. Thomas searched the interior of the car first. He then tried to open the trunk, but it was locked. The ignition key left in the car by Kemp would not open the trunk. Thomas returned to Harting's patrol car and asked Kemp for the key to the trunk.
Kemp reached into his pocket and gave Thomas the trunk key. Walton stood silent throughout the whole search. He was not asked for his consent by the deputies, nor did he ever assert any disagreement with Kemp's consent to search. Upon opening the trunk, Thomas saw two bags. One was a blue suitcase and one was a black zippered duffle bag. Neither was locked.
Thomas first opened the blue suitcase. It contained plastic pouches filled with a substantial amount of white powder. It looked like contraband, and a field test established it was cocaine. Thomas then opened the black duffle bag and found an additional substantial amount of cocaine. Walton and Kemp were then placed under arrest. It was later determined from the items found in the bags, as well as Walton's and Kemp's statements, that the blue suitcase belonged to Walton, and the black duffle bag belonged to Kemp.
It appears to us the search of Walton's blue suitcase can be sustained under Fourth Amendment attack by two theories, either of which is legally sufficient: valid third party consent by Kemp; or inevitable discovery of the contraband in the blue suitcase, since the deputy was poised to search the black duffle bag and would have found contraband there as well.
I. CONSENT BY A THIRD PARTY
One exception to the exclusionary rule for evidence obtained by a warrantless search and seizure is where the police have *383 obtained the consent of a third person who has common authority over the premises, or has a sufficient relationship to the premises or to the property and effects to be searched. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (joint occupant, a common law wife, could consent to search of bedroom she shared with defendant); United States v. Sealey, 830 F.2d 1028 (9th Cir.1987) (wife of defendant and joint owner and occupant of house could consent to search of house, garage, and attic); Gladden v. Frazier, 388 F.2d 777 (9th Cir.1968), affirmed, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (roommate could consent to search of bedroom and duffle bag, both of which he shared with the defendant); United States v. Murphy, 506 F.2d 529 (9th Cir.1974), cert. denied, 420 U.S. 996, 95 S.Ct. 1433, 43 L.Ed.2d 676 (1975) (employee of defendant to whom defendant gave a key to defendant's warehouse, held authorized to consent to search of the warehouse).
In the context of vehicles on the highway and searches after a valid traffic stop, courts generally hold that the driver of a car can validly authorize the police to search the car, whether or not there are other passengers in the car. Rada v. State, 544 So.2d 1112 (Fla. 3d DCA 1989).
In United States v. Morales, 861 F.2d 396 (3d Cir.1988), the passenger was actually the lessee of the car, but he stood silently by and did not countermand the driver's consent to search. The contraband was found hidden behind the rear passenger seat. The court in Morales refused to say it would uphold a search of a passenger's luggage or other personal effects on the basis of a driver's consent to search.
However, in United States v. Anderson, 859 F.2d 1171 (3d Cir.1988), the same court sustained the search of a passenger's suitcase by the police which was located in the trunk of a car driven by a person who consented to the search. Neither Taylor, the passenger, nor Anderson, the driver, owned the car. But the court held that Anderson, as the driver, had at least "common authority" over the trunk of the car and could validly consent to its search, including all of the luggage found therein. The court noted that, as in the instant case, the passenger stood by without objection while the trunk was being searched.
If police officers have probable cause to search a car, they can search the entire vehicle, including all of its compartments and containers, and they can open closed containers to investigate their contents. United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The same scope of search should apply if based on the driver's consent to search the car and its contents,[1] where a different ownership is not apparent or made apparent to the officers conducting the search. See United States v. Hamilton, 792 F.2d 837 (9th Cir.1986). As the court said in United States v. Robinson, 479 F.2d 300 (7th Cir.1973):
The police might be deterred from employing consent searches altogether if they were required to ascertain the ownership or possession or custody of every article or space on the premises searched. The metaphysical subtleties would be endless and consent searches would be lost for the law enforcement arsenal.
479 F.2d at 303.
In the instant case, Kemp had control over the vehicle and its trunk by virtue of the fact that he was the driver and had the key to the trunk. Once the deputy opened the trunk, there was nothing to alert him that both or none or only one of the bags belonged to Kemp, and that he could not consent to their search. Kemp had apparent authority in these circumstances, to *384 consent to the search of all the luggage in the trunk.[2] Had Walton protested and claimed ownership of his blue suitcase after Kemp gave the deputy his consent and key to search the trunk, we might conclude otherwise on the consent issue. But a significant fact here is Walton's tacit acquiescence. Here, too, "[t]he Defendant did not object to the search at anytime." Rada at 1113.

II. INEVITABLE DISCOVERY
Without regard to the consent issue, another equally valid basis exists in this case to admit the controverted evidence over Fourth Amendment objections: that of inevitable discovery. Generally, the trier of fact must find by a preponderance of the evidence that the information sought to be suppressed would have been discovered by lawful means. If so, it can be admitted even though it was unlawfully obtained. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); United States v. Brookins, 614 F.2d 1037 (5th Cir.1980); State v. LeCroy, 435 So.2d 354 (Fla. 4th DCA 1983). If the circumstances established by the record could lead to such a conclusion, the appellate court should reverse the suppression order and remand for the trial court's determination of whether a preponderance of the evidence supports the inevitable discovery theory. State v. Ruiz, 502 So.2d 87 (Fla. 4th DCA 1987); State v. McLaughlin, 454 So.2d 617 (Fla. 5th DCA 1984).
However, in the instant case, the record establishes without dispute that the cocaine in the blue suitcase would undoubtedly and without any question have been discovered. It would not have made any difference if Walton had objected to the search, or if Kemp had only consented to searching his duffle bag. The deputy was clearly going to search the duffle bag. Once he discovered contraband in the duffle bag, the deputy would then have had probable cause to search the blue suitcase. See Henderson v. State, 535 So.2d 659 (Fla. 3d DCA 1988); Palmer v. State, 467 So.2d 1063 (Fla. 3d DCA 1985).
It is unnecessary in this case to remand the cause to the trial court to make a finding based on a preponderance of the evidence that the contraband in the blue suitcase "inevitably" would have been found. The unchallenged facts establish sufficient "inevitability." It was purely fortuitous which piece of luggage the deputy searched first. He clearly was going to search them both.
Accordingly, we reverse the suppression order and remand this case to the trial court for further proceedings.
REVERSED and REMANDED.
HARRIS and PETERSON, JJ., concur.
NOTES
[1] State v. Wells, 539 So.2d 464 (Fla. 1989), affirmed, ___ U.S. ___, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990); State v. Jimeno, 550 So.2d 1176 (Fla. 3d DCA 1989); and Shelton v. State, 549 So.2d 236 (Fla. 3d DCA 1989) are distinguishable from the facts presented here. In those cases, no actual consent to search the contents of the vehicle or the area had been obtained. In contrast, here, Kemp signed a Voluntary Consent to Search form which specifically authorized officers "to conduct a complete search of my vehicle and the contents within it." (emphasis added).
[2] See State v. Lucero, 143 Ariz. 108, 692 P.2d 287 (Ariz. 1984); State v. McGann, 132 Ariz. 296, 645 P.2d 811(Ariz. 1982); State v. Logan, 617 S.W.2d 433 (Mo. App. 1981).