627 A.2d 1074

STATE OF NEW JERSEY, PLAINTIFF,
v. RAMON SUAZO, DEFENDANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. NELSON HOYER, DEFENDANT–APPELLANT.

Argued March 30, 1993—Decided July 27, 1993.

*Anthony J. Cariddi,* argued the cause for appellant (*Cariddi and Garcia,* attorneys).

*Larry R. Etzweiler,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

STEIN, J.

The present appeal, like the companion case, *State v. Maristany*, 133 *N.J.* 299, 627 *A.*2d 1066, also decided today, addresses the validity of a search of luggage contained in the trunk of a car based on the driver's consent. In *Maristany* we expressed the view that ordinarily a law-enforcement officer may reasonably rely on the apparent authority of the driver of a vehicle to consent to a search of the car and its contents, absent evidence to suggest that the driver is not the owner of the property sought to be searched. *Id.* at 306, 627 *A.*2d at 1069. In this appeal, we consider the reasonableness of a State Trooper's reliance on the driver's consent to search in view of a passenger's claim of ownership of luggage found in the vehicle.

I

On April 21, 1990, State Trooper Edwin Torres was patrolling Interstate 95 near Ridgefield Borough when he observed a gold Toyota with out-of-state license plates weaving within the right-hand lane at forty-five miles per hour. Torres stopped the car and asked the driver, defendant Ramon Suazo, for his driving credentials. Suazo produced his license and a registration indicating that Suazo's sister owned the vehicle.

In order to determine whether Suazo was intoxicated, Torres asked Suazo to get out of the vehicle. Torres and Suazo walked to the rear of the car; the passenger, defendant Nelson Hoyer, remained inside. (Henceforth, reference to "defendant" is to Hoyer, the only defendant before us on this appeal). The trooper questioned Suazo about his erratic driving. Suazo claimed that he had not been drinking. He explained that he and his passenger had been traveling together for "a week or so," and that he was exhausted, having driven from Georgia with only a short rest. When asked whether defendant could have shared the driving, Suazo stated that he did not know if his passenger had a driver's license. In addition, Suazo claimed that he did not know his passenger's last name.

Torres then questioned defendant. Defendant stated that he and Suazo had been traveling "just a couple days." Defendant claimed that they had been in the south and were now "heading home." When Torres asked defendant where "home" was, defendant replied that he was from Venezuela and had no United States residence.

In view of the conflicting responses, Torres returned to the rear of the vehicle and requested Suazo's consent to search the car. Torres advised Suazo of his right to refuse consent. Suazo acquiesced in the search and signed a consent-to-search form authorizing Trooper Torres to conduct a "complete search of [the] vehicle."

Defendant and Suazo stood alongside the car while Torres searched the passenger compartment. He found no contraband. In the trunk, Torres found a "clutter of articles," including a red nylon clothes bag. The bag contained no tags identifying the owner. As Torres removed the red bag from the trunk, defendant stated that the bag belonged to him. Nevertheless, Torres proceeded to open the bag and found several articles of clothing and a brown paper bag. Inside the paper bag, Torres discovered four brown packages. Torres asked defendant and Suazo to identify the packages. Both men denied knowledge of their contents. Torres opened one package, discovered a white powdery substance, and seized the evidence, later identified as four kilograms of cocaine.

Defendant was indicted for possession of a controlled dangerous substance, contrary to *N.J.S.A.* 2C:35-10a(1), and possession of a controlled dangerous substance with intent to distribute, contrary to *N.J.S.A.* 2C:35-5a(1) and 5b(1). Defendant filed a motion to suppress the evidence, contending that Suazo's consent to search the vehicle had not been valid with respect to the bag allegedly owned by defendant.

Finding that the evidence adduced at the suppression hearing did not clearly establish the actual owner of the red bag, the trial court denied the motion to suppress. The court noted that

although defendant had stated that the bag was his, he had denied any knowledge of the bag's contents. The court concluded that in view of the conflicting statements, Torres reasonably might have doubted defendant's claimed ownership of the red bag.

Defendant entered a conditional guilty plea to possession of a controlled dangerous substance with intent to distribute. In exchange, the State dismissed the remaining charge and recommended a maximum sentence of twelve years imprisonment. Defendant was sentenced to twelve years imprisonment with a four-year period of parole ineligibility.

Defendant appealed, arguing that he had been illegally detained without probable cause and challenging the trial court's denial of the motion to suppress. In an unreported opinion, the Appellate Division affirmed, the panel members offering separate grounds on which to sustain the search with respect to defendant. The opinion of the court concluded that the search of the red bag was valid, based on the "objective indicia of Suazo's common authority over the car and its contents." The court found that the lack of objective proof of the bag's ownership, defendant's failure to protest the search, and defendant's claimed ignorance of the bag's contents justified the trooper's reliance on Suazo's consent. In a concurring opinion, two members concluded that Suazo's consent had not authorized a search of defendant's personal property. However, they found that defendant implicitly had consented to the search by remaining silent as the trooper searched the bag. We granted defendant's petition for certification, 130 *N.J.* 601, 617 *A.*2d 1223 (1992).

## II

When preceded by valid consent, a warrantless search of property is permissible under the Fourth Amendment to the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution. *Schneckloth v. Bustamonte,* 412 *U.S.* 218, 219, 93 *S.Ct.* 2041, 2044, 36 *L.Ed.*2d 854, 858 (1973); *State v. Johnson,* 68 *N.J.* 349, 353–54, 346 *A.*2d 66 (1975). Consent must

be voluntary and the consenting party must understand his or her right to refuse. *Ibid.*

We previously have acknowledged that valid consent may be obtained from one other than the accused. *See State v. Coyle,* 119 *N.J.* 194, 215, 574 *A.*2d 951 (1990). A third party who possesses "common authority over or other sufficient relationship" to the property sought to be inspected may consent to its search. *United States v. Matlock,* 415 *U.S.* 164, 171, 94 *S.Ct.* 988, 993, 39 *L.Ed.*2d 242, 250 (1974). That authority to consent arises from the "mutual use of the property by persons generally having joint access or control for most purposes * * *." *Id.* at 171 n. 7, 94 *S.Ct.* at 993 n. 7, 39 *L.Ed.*2d at 250 n. 7.

A third party who possesses the authority to consent to a search of premises generally, however, may lack the authority to consent to a search of specific containers found on those premises. *United States v. Block,* 590 *F.*2d 535, 541 (4th Cir.1978); *Coyle, supra,* 119 *N.J.* at 217, 574 *A.*2d 951. For example, a third party's consent does not extend to containers in which the consenting party has disclaimed ownership. *State v. Lee,* 245 *N.J.Super.* 441, 447, 586 *A.*2d 256 (App.Div.1991). Further, a third party's consent is invalid with respect to property within the exclusive use and control of another. *United States v. Poole,* 307 *F.Supp.* 1185, 1189 (E.D.La.1969); *Silva v. State,* 344 *So.*2d 559, 563 (Fla.1977); *State v. Johnson,* 85 *N.M.* 465, 467, 513 *P.*2d 399, 401 (App.1973).

■ Nevertheless, if a law-enforcement officer at the time of the search erroneously, but reasonably, believed that a third party possessed common authority over the property to be searched, a warrantless search based on that third party's consent is permissible under the Fourth Amendment. *Illinois v. Rodriguez,* 497 *U.S.* 177, 186, 110 *S.Ct.* 2793, 2800, 111 *L.Ed.*2d 148, 160 (1990). In assessing an officer's reliance on a third party's consent, we consider whether the officer's belief that the third party had the authority to consent was objectively reasonable in view of the facts and circumstances known at the time of the search. *Id.* at 188–89, 110 *S.Ct.* at 2801, 111 *L.Ed.*2d at 161; *State v. Bruzzese,* 94 *N.J.*

210, 219, 221, 463 *A.*2d 320 (1983), *cert. denied,* 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984).

## III

■ Applying those principles to the search of a vehicle, courts have concluded that because a driver has immediate possession of and control over the car, he or she may consent to its search. *See United States v. Eldridge,* 984 *F.*2d 943, 948 (8th Cir.1993); *United States v. Dunkley,* 911 *F.*2d 522, 526 (11th Cir.1990), *cert. denied,* 498 *U.S.* 1096, 111 *S.Ct.* 987, 112 *L.Ed.*2d 1071 (1991); *United States v. Morales,* 861 *F.*2d 396, 399 (3d Cir.1988); *State v. Walton,* 565 *So.*2d 381, 383 (Fla.Dist.Ct.App.1990); *People v. Mendoza,* 234 *Ill.App.*3d 826, 175 *Ill.Dec.* 361, 367, 599 *N.E.*2d 1375, 1381 (1992). However, in the absence of evidence of joint access to or control over property found in the vehicle, a driver's apparent authority to consent to a search of the car does not include the authority to permit a search of the personal belongings of other passengers. *See United States v. Padron,* 657 *F.Supp.* 840, 847 (D.Del.1987), *aff'd sub nom. United States v. Rubio,* 857 *F.*2d 1466 (3d Cir.), *cert. denied,* 488 *U.S.* 974, 109 *S.Ct.* 512, 102 *L.Ed.*2d 547 (1988); *Ledda v. State,* 564 *A.*2d 1125, 1129 (Del. 1989); *State v. Santana,* 215 *N.J.Super.* 63, 69, 521 *A.*2d 346 (App.Div.1987); *State v. Lynch,* 94 *Or.App.* 168, 764 *P.*2d 957, 959 (1988); *State v. Zachodni,* 466 *N.W.*2d 624, 628 (S.D.1991). *But see United States v. Anderson,* 859 *F.*2d 1171, 1176–77 (3d Cir. 1988); *United States v. Varona–Algos,* 819 *F.*2d 81, 83 (5th Cir.), *cert. denied,* 484 *U.S.* 929, 108 *S.Ct.* 296, 98 *L.Ed.*2d 255 (1987); *Walton, supra,* 565 *So.*2d at 383–84; *State v. Rawls,* 552 *So.*2d 764, 767 (La.Ct.App.1989).

Courts that have expressed the view that a driver's authority to consent to a search of the vehicle includes the authority to consent to a search of containers found in the car have considered the passenger's failure to claim ownership or object to the search material in assessing the extent of the driver's authority to consent. *See Anderson, supra,* 859 *F.*2d at 1177 (finding passen-

ger's failure to object to search of personal belongings inconsistent with claim of expectation of privacy); *Varona–Algos, supra,* 819 *F.*2d at 83 (sustaining search of passenger's luggage in view of passenger's "standing by and equivocally acknowledging that the bag was his"); *Walton, supra,* 565 *So.*2d at 383–84 (suggesting that search based on driver's consent would have been invalid had passenger protested and claimed ownership of suitcase); *Rawls, supra,* 552 *So.*2d at 767 (noting that at time of search passenger failed to assert ownership or possessory interest in luggage and did not attempt to limit or terminate driver's consent).

In view of defendant's assertion of ownership of the red bag, we are impelled to conclude that Trooper Torres' reliance, without further inquiry, on Suazo's consent to search the vehicle was unreasonable. Although Suazo clearly had the authority to consent to a search of the vehicle, defendant's claim of ownership put the trooper on notice that someone other than the consenting party might have a superior privacy interest in the red bag. When circumstances suggest that the property to be searched belongs to someone other than the consenting party, the validity of the third-party consent becomes questionable.

As we noted in *Maristany, supra,* 133 *N.J.* at 308, 627 *A.*2d at 1070, the preferred procedure for law-enforcement officers seeking consent to search one of several pieces of luggage in a car with more than one occupant is for the officers to determine which occupant owns each item of luggage, so that the officers' reliance on consent to search may be justifiable. Although adherence to that procedure is not determinative of the validity of a search, defendant's acknowledgment that he owned the red bag impelled Trooper Torres either to seek defendant's consent or to make further inquiry before opening the bag.

Further, based on the record before us, we cannot conclude that defendant implicitly had consented to a search of the red bag. Clearly, a consent sufficient to avoid the necessity of a search warrant may be implied from all of the attendant circumstances. *State v. Koedatich,* 112 *N.J.* 225, 262, 548 *A.*2d 939

(1988). The Appellate Division found that the circumstances of the search, including defendant's "incidental claim of ownership, and [ ] lack of objection and apparent acquiescence as the bag was opened," constituted implied consent. The Appellate Division correctly noted that the presence and silence of a co-occupant may lend authority to a search. *See Anderson, supra,* 859 *F.*2d at 1177; *Varona–Algos, supra,* 819 *F.*2d at 83; *Rawls, supra,* 552 *So.*2d at 767. However, as we stated in *Johnson, supra,* assent to a search is meaningless unless the consenting party understood his or her right to refuse consent. 68 *N.J.* at 353–54, 346 *A.*2d 66. Absent evidence to suggest that defendant was aware of his right to object to the search of the red bag, we are unwilling to equate defendant's silence with a knowing waiver of a constitutional right.

## IV

The judgment of the Appellate Division is reversed and the matter remanded for retrial. In view of our disposition, we need not address the legality of defendant's initial detention.

GARIBALDI, J., dissenting.

The constitutionality of a search pursuant to consent depends on whether the conduct of the law-enforcement officer who undertook the search was objectively reasonable. *State v. Maristany,* 133 *N.J.* 299, 305, 627 *A.*2d 1066, 1068 (1993) (citing *State v. Bruzzese,* 94 *N.J.* 210, 219, 463 *A.*2d 320 (1983), *cert. denied,* 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984)). The Court concludes that Officer Torres's conduct with respect to the consent to search was objectively unreasonable. I disagree and conclude, as did the trial court and the Appellate Division, that Officer Torres's conduct was objectively reasonable in view of the totality of the circumstances at the time of the search.

## I

Assessing the objective reasonableness of a law-enforcement officer's actions involves a particularly fact-sensitive inquiry.

State Trooper Torres properly stopped a gold Toyota with out-of-state license plates weaving within the right-hand lane at forty-five miles per hour. Trooper Torres, who is fluent in Spanish, asked the driver, defendant Ramon Suazo, for his driving credentials. Suazo produced his license and a registration indicating that Suazo's sister owned the vehicle. Suspecting that Suazo might be under the influence of drugs or alcohol, Trooper Torres asked him to step out of the car. Asked about his condition, Suazo explained that he was not drunk but was very tired. He had been driving north from Savannah, Georgia, with only a short stop in Washington, D.C. When the Trooper asked if the passenger could have shared the driving, Suazo said that he did not know if his passenger had a driver's license. Suazo further stated that he knew only the first name of his passenger.

Torres then questioned the passenger, defendant Nelson Hoyer, in Spanish. Hoyer, however, offered a different travel scenario. He said he had just been traveling in the South for a few days and that he was going home. However, Hoyer admitted that he had no United States residence and that he came from Venezuela. Officer Torres sought Suazo's consent to search the car. Suazo signed the standard State Police consent form in Spanish after Trooper Torres had read it to him in Spanish and advised him of his right to refuse to consent.

The Trooper's search of the car's interior revealed nothing of interest. He then opened the trunk and found "a clutter of articles," one of which was a red nylon clothes bag. He took the bag out of the trunk and Hoyer stated that it was his. The record contains no proof that the bag was locked or otherwise secured, nor did the bag contain any name tags or labels identifying the owner. Without protest from Hoyer, the Trooper opened the bag. According to Trooper Torres, "there were several articles of clothing in there with a brown grocery-type paper bag. I opened that paper bag and I found four brown taped packages." Trooper Torres said that he "took out the packages and asked if they knew what it was and they indicated no. I took a knife, pocket knife, I

slit one of the packages, and a white powdery substance came from within the package."

## II

The Fourth Amendment to the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution proscribe unreasonable searches and seizures to ensure that citizens will be protected from warrantless searches. An exception to the warrant requirement is a search conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 *U.S.* 218, 93 *S.Ct.* 2041, 36 *L.Ed.*2d 854 (1973). In *Maristany, supra*, we recognized that,

[c]onsent may be obtained from the person whose property is to be searched, see *Schneckloth, supra*, 412 *U.S.* 218, 93 *S.Ct.* 2041, 36 *L.Ed.*2d 854 (1973), from a third party who possesses common authority over the property, see *United States v. Matlock*, 415 *U.S.* 164, 94 *S.Ct.* 988, 39 *L.Ed.*2d 242 (1974), or from a third party whom the police reasonably believe has authority to consent, see *Illinois v. Rodriguez*, 497 *U.S.* 177, 110 *S.Ct.* 2793, 111 *L.Ed.*2d 148 (1990).

[*Id.* at 305, 627 *A.*2d 1069.]

Relying on *Illinois v. Rodriguez*, the majority recognizes that "if a law-enforcement officer at the time of the search erroneously, but reasonably, believed that a third party possessed common authority over the property to be searched, a warrantless search based on that party's consent is permissible under the Fourth Amendment." *Ante* at 305–306, 627 *A.*2d at 1068–1069; *see Illinois v. Rodriguez, supra*, 497 *U.S.* at 186, 110 *S.Ct.* at 2800, 111 *L.Ed.*2d at 160. The standard established in *Rodriguez* is objective: "would the facts available to the officer at the moment * * * 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises." *Id.* at 188, 110 *S.Ct.* at 2801, 111 *L.Ed.*2d at 161 (quoting *Terry v. Ohio*, 392 *U.S.* 1, 21–22, 88 *S.Ct.* 1868, 1880, 20 *L.Ed.*2d 889, 906 (1968)).

Hence, the validity of the search depends on whether Trooper Torres had a reasonable basis for believing that Suazo had the authority to consent to a search of the bag in the trunk considering the facts and circumstances known to him at the time of the

search. After reviewing the facts and circumstances known to Trooper Torres, I am persuaded that the officer reasonably relied on Suazo's consent to search the car and its contents.

As the driver, Suazo had immediate possession of and control over the vehicle. By possessing the keys to the car and trunk, Suazo displayed sufficient control over the vehicle to enable him to consent to its complete search, including the trunk, glove compartment, and other areas. *See Maristany, supra,* 133 *N.J.* at 307, 627 *A.*2d at 1070. Suazo exercised that control when he consented to a search of the car and voluntarily opened the trunk for the trooper's inspection.

After the trunk had been opened, defendant said that the red bag belonged to him. However, Trooper Torres had no objective proof that Hoyer indeed owned the bag. Suazo clearly had legal authority over the car: he had the proper credentials, his sister owned the car, he was the only driver, and he executed a broad consent form. Suazo never disclaimed a right of access to or denied ownership in the bag. The bag contained no identification. In view of the men's conflicting statements, Torres may reasonably have accepted Suazo's status as one with authority over the goods. Moreover, although Hoyer asserted an ownership interest in the bag, he did not object to the search and apparently acquiesced in it.

Based on the facts available to Officer Torres at the time of the search, he reasonably concluded that Suazo had authority to consent to the search of the bag. That search was reasonable and therefore valid. That Officer Torres may have been mistaken as to the ownership of the bag does not make his consent search unreasonable. Like all searches, consent searches are subject to the Fourth Amendment's proscription on "unreasonable searches and seizures." Therefore,

[i]f it is otherwise true that under the Fourth Amendment the police are entitled to proceed upon the basis of the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," even if it results in a "mistake [that] was understandable and * * * a reasonable response to the situation facing them at the time," then surely it is likewise correct that a

reasonable mistake in determining a third party's authority to consent does not give rise to an unreasonable search.

[3 Wayne R. LaFave, *Search and Seizure* § 8.3(g) (Supp.1993) (hereinafter "*Search and Seizure*") (quoting *Brinegar v. United States,* 338 *U.S.* 160, 175, 69 *S.Ct.* 1302, 1310, 93 *L.Ed.* 1879, 1890 (1949), and *Hill v. California,* 401 *U.S.* 797, 804, 91 *S.Ct.* 1106, 1110, 28 *L.Ed.*2d 484, 490 (1971)).]

Officer Torres made a split-second decision in a real life situation. He acted in good faith without the leisure of a constitutional analysis grounded on twenty/twenty hindsight.

When the police are engaged in the difficult and sometimes dangerous business of solving crime, actions which they take in a good faith attempt to do their job should not be reviewed by courts against a holier-than-thou standard of exceedingly technical complexity which the police officers cannot realistically be expected to administer. In other words, judicial determinations of the "reasonableness" of third party consent searches cannot properly ignore the circumstances of the search *as they appeared to the police* at the time the decision to search was made.

[*Search and Seizure* § 8.3(g) (quoting Comment, 53 *B.U.L.Rev.* 1089, 1110 (1973)).]

Although possibly mistaken, Officer Torres's decision to execute a search was reasonable under the circumstances. It was a decision that three courts, after a careful analysis of the facts, were not themselves able to decide unanimously. I conclude, as did the lower courts, that Trooper Torres' actions were constitutionally permissible, and the majority concludes that they were not. I do agree, nevertheless, with the Court's opinion that "the preferred procedure for law-enforcement officers seeking consent to search one of several pieces of luggage in a car with more than one occupant is for the officers to determine which occupant owns each item of luggage." *Ante* at 322, 627 *A.*2d 1077. However, Officer Torres's failure to follow that procedure does not invalidate the search that was objectively reasonable under the circumstances.

## III

The concurring members of the Appellate Division concluded that Hoyer's silence at the time of the search implied his consent to that search. I agree. Although certain closed and locked containers may not be within the ambit of a third party's consent, the presence and silence of the container's owner can lend authority to the search:

A court may be more inclined to find that a co-occupant lacked a privacy expectation in the container if that co-occupant "stood by and watched without objection" as the police searched it upon the consent given by the other occupant.

[*Search and Seizure* § 8.5 (quoting *United States v. Anderson,* 859 *F.*2d 1171, 1177 (3d Cir.1988)).]

A defendant's claim of ownership in the property to be searched is not necessarily enough to invalidate a third party's consent, especially if the claim of ownership is equivocal and coupled with what is perceived as acquiescence to the search. In *Anderson, supra,* 859 *F.*2d 1171, neither Anderson, the driver, nor Taylor, the passenger, owned the vehicle. Anderson signed a broad form consenting to the search of the vehicle. Taylor stated that he owned one of the bags in the trunk, yet he did not object to the search of the bag. Taylor moved for suppression of the evidence found in his bag, contending that the search exceeded the scope of Anderson's consent. In affirming the search, the court held that "Anderson as the driver had at least common authority over the trunk and could validly consent to the search thereof." *Id.* at 1177. Moreover, the court noted that

it is uncontroverted that while the car was being searched, Taylor stood by and watched without objection. Such behavior is completely inconsistent with the contention that Taylor retained an expectation of privacy. It was therefore proper for the fruits of the search to be admitted against Taylor.

[*Ibid.*]

*See also United States v. Varona–Algos,* 819 *F.*2d 81, 83 (5th Cir.), *cert. denied,* 484 *U.S.* 929, 108 *S.Ct.* 296, 98 *L.Ed.*2d 255 (1987) (holding that after driver consented to search, passenger who equivocally claimed ownership of bag in trunk, stood by, and allowed search to proceed without objection impliedly consented to search).

Hoyer's action constituted an implied consent to the search of the bag. As Judge Dreier in his concurrence in the Appellate Division stated, "the entire circumstances of the event, including Suazo's consent which triggered the search, the officer's discovery of the bag, Hoyer's incidental claim of ownership, and his lack of

objection and apparent acquiescence as the bag was opened, constituted a reasonable basis for Trooper Torres' conduct."

I would affirm the judgment of the Appellate Division.

Justices HANDLER and O'HERN join in this dissent.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, POLLOCK and STEIN—4.

*For affirmance*—Justices HANDLER, O'HERN and GARIBALDI—3.