**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5003-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ALBERT L. DINKINS,

     Defendant-Appellant.

_____

Argued May 13, 2019 – Decided May 31, 2019

Before Judges Messano and Rose.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 14-09-1617.

Marcia H. Blum, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Marcia H. Blum, of counsel and on the brief).

Monica Lucinda do Outeiro, Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Monica Lucinda do Outeiro, of counsel and on the brief).

PER CURIAM

Following denial of his motion to suppress evidence seized without a search warrant, defendant Albert L. Dinkins pled guilty to third-degree fraudulent use of a credit card, N.J.S.A. 2C:21-6(h).  Pursuant to the terms of the negotiated plea agreement, the remaining six counts charged in the Monmouth County indictment were dismissed at sentencing.

The sole issue in this appeal is whether the judge erred in denying defendant's motion to suppress evidence seized under the consent exception to the warrant requirement.  Before us, defendant argues:

> POINT I
>
> THE EVIDENCE SEIZED IN THE WARRANTLESS SEARCH OF THE CAR MUST BE SUPPRESSED BECAUSE THE SEARCH WAS CONDUCTED DESPITE DEFENDANT'S OBJECTION AND VIOLATED STATE AND FEDERAL CONSTITUTIONAL PROTECTIONS AGAINST UNREASONABLE SEARCH AND SEIZURE.
>
> A. Because [Defendant] Had A Reasonable Expectation Of Privacy In The Car, The Police Were Bound To Honor His Refusal To Consent To The Search.
>
> B. The Rental Company Could Not Give "Third-Party Consent" To Search.
>
> C. The State Did Not Establish That The Lease Had Expired, But Even If It Had Established That The Lease

2

Had Expired, The Rental Company Could Not Give Consent To Search.

D. Even If The Rental Company Could Consent To Search The Car, It Could Not Consent To Search Closed Containers In The Vehicle.

E. There Were No Exigent Circumstances That Justified The Failure To Obtain A Warrant. [(Not Raised Below)[1]]

Having considered these arguments in view of the record and applicable legal principles, we reverse and remand.

## I.

At the suppression hearing, defendant did not challenge the propriety of the motor vehicle stop, stipulating to the facts that led up to it. In summary, on June 20, 2014, police stopped the vehicle based on information received from a Macy's loss prevention officer, concerning the alleged use of fraudulent credit cards. Defendant matched the description of the suspect, who attempted to purchase gift cards at several cash registers "with credit cards that he was taking out of different pockets." The vehicle matched the description of the suspect's

---

[1] The State did not seek to justify the search based on exigent circumstances before the motion judge, nor does it do so on appeal. We therefore decline to consider that argument.

A-5003-17T1

automobile, which exited the Monmouth Mall traveling southbound on Route 35.

Shortly thereafter, Eatontown Police Officer Michael Schmerler stopped the car on Route 35. The officer testified that defendant produced a driver's license, but defendant said he was unable to produce the registration or insurance card for the vehicle "because it was a rental car." Upon being advised by Schmerler of the reason for the stop, defendant claimed he had not been in Macy's, but had visited the food court and a shoe store in the mall. A back-up officer at the scene asked to search the vehicle; defendant expressly refused consent.

Defendant was arrested after a warrant check conducted at the scene revealed an active warrant in the name of the person listed on defendant's driver's license. During processing at the police station, defendant admitted the license belonged to his brother. Defendant was charged with obstruction-related offenses, and remanded to the county jail.

Thereafter, Detective Aaron Shaw determined the car was rented by Shernell Grant from June 7 to June 13, 2014, and "defendant was not listed as a renter or an[] additional driver" on the rental agreement. It is unclear from the record when or how Shaw made that determination. During a recorded

telephone conversation on an unspecified date, Grant told Shaw "she had no idea what was in the car and that [defendant was the] sole driver of the vehicle . . . ." Shaw could not recall whether he asked Grant to consent to a search of the vehicle. Shaw did not testify whether Grant indicated she extended the rental agreement, and Grant did not testify at the hearing.

Three days after the car stop, and while defendant remained lodged in the county jail, Shaw contacted the rental car company and obtained consent to search from the company's representative. Shaw did not ask the representative whether the rental agreement had been extended. Among other things, officers recovered: the rental car receipt; gift cards; and merchandise contained in bags identified with logos from various stores, including Macy's. Defendant was charged with theft-related offenses.

At the conclusion of the suppression hearing, the judge rendered an oral decision, denying defendant's motion. The judge acknowledged defendant had "legal possession" of the automobile at the time he refused consent. The judge then reasoned defendant lost the possessory interest he had in the car "that he had merely been driving" based on his own actions. Specifically, defendant "gave false information to the police as to his identity, which led to charges of hindering and obstruction" and his incarceration in the county jail.

The judge then determined defendant did not possess a reasonable expectation of privacy on the date the rental car was searched "[b]ecause at that point he did not have a proprietary, possessory or participatory interest in the vehicle." The judge specifically rejected "the theory that once . . . defendant objected[,] the police could never go into that car, [which] would have to sit in the [police impound] yard until . . . defendant was ready to come back [from custody] . . . ." The judge said that result would be "ludicrous" especially because defendant "never indicated to the police that he had any personal property in that car that belonged to him."[2] The judge noted the rental agreement, which had expired days earlier, was not in defendant's name. Ultimately, the judge determined the rental company, as the "true owner of the vehicle[,]" gave valid consent to search the vehicle.

## II.

In reviewing a suppression ruling, we are mindful that we must uphold a trial court's factual findings if they are supported by sufficient credible evidence in the record. State v. Dunbar, 229 N.J. 521, 538 (2017). "We accord no

---

[2] The judge acknowledged that an application for a search warrant "would have been the safer thing to do" but was unnecessary under Fernandez v. California, 571 U.S. 292, 306 (2014) (recognizing "[a] warrantless consent search is reasonable and thus consistent with the Fourth Amendment irrespective of the availability of a warrant").

deference, however, to a trial court's interpretation of law, which we review de novo." Ibid.

Under the Fourth Amendment of the United States Constitution and Article 1, Paragraph 7 of the New Jersey Constitution, a warrantless search is presumed invalid, and places the burden on the State to prove the search "falls within one of the few well-delineated exceptions to the warrant requirement." State v. Pineiro, 181 N.J. 13, 19 (2004) (quoting State v. Maryland, 167 N.J. 471, 482 (2001)). Consent is a well-recognized exception to the warrant requirement. See e.g., State v. Hagans, 233 N.J. 30, 39 (2018); State v. Cushing, 226 N.J. 187, 199 (2016).

"Consent may be obtained from the person whose property is to be searched, from a third party who possesses common authority over the property, or from a third party whom the police reasonably believe has authority to consent." State v. Maristany, 133 N.J. 299, 305 (1993) (citations omitted). In assessing an officer's reliance on a third party's consent, courts look to whether the officer's belief that the third party had the authority to consent was "objectively reasonable" in view of the facts and circumstances known at the time of the search. State v. Suazo, 133 N.J. 315, 320 (1993).

Relevant here, as the motion judge aptly recognized, there is a lack of case law in this State "that directly addresses th[e] issue of whether a driver who is not listed on the rental agreement has a reasonable expectation of privacy in the rental vehicle." Instead, the judge relied on three federal decisions that supported his denial of defendant's motion. Recently, however, the United States Supreme Court decided Byrd v. United States, __ U.S. __, 138 S. Ct. 1518, 1531 (2018), resolving the conflict that existed in the circuit courts on this issue.

Like the present case, the defendant in Byrd was the sole occupant of a rental vehicle stopped by police. Id. at 1523. Similarly, during the stop in Byrd, the officers determined the defendant was not listed as an authorized driver on the rental agreement, which expressly provided, "permitting an unauthorized driver to operate the vehicle is a violation of the rental agreement." Id. at 1523-24. After the defendant refused consent, the officers nonetheless searched the vehicle. Id. at 1523. In doing so, they believed the defendant did not have a reasonable expectation of privacy in the rental vehicle because he was not listed as an authorized driver in the agreement. Id. at 1525.

In finding otherwise, the Court held "the mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not

A-5003-17T1

defeat his or her otherwise reasonable expectation of privacy."  Id. at 1531.  The

Court elaborated:

> [F]or Fourth Amendment purposes there is no meaningful difference between the authorized-driver provision and the other provisions [of] the [rental agreement that] do not eliminate an expectation of privacy, all of which concern risk allocation between private parties—violators might pay additional fees, lose insurance coverage, or assume liability for damage resulting from the breach.  But that risk allocation has little to do with whether one would have a reasonable expectation of privacy in the rental car if, for example, he or she otherwise has lawful possession of and control over the car.
>
> [Id. at 1529.]

Here, although defendant was not listed on the rental agreement as an

authorized driver, he had permission from Grant, who was the authorized renter,

to drive the vehicle.  Indeed, Grant said defendant was the "sole driver" of the

car, and she disclaimed any knowledge whatsoever of the vehicle's contents.

Accordingly, defendant was "in lawful possession of and control over the car"

when Schmerler conducted the stop.  See ibid.  Defendant thus had a reasonable

expectation of privacy in that vehicle, although he was not an authorized driver

under the rental agreement.  See id. at 1531.

Unlike the circumstances in Byrd, however, after defendant refused

consent, the officers sought and obtained consent from the rental car company

three days after he refused consent. Defendant claims the company's consent under those circumstances did not override his refusal at the time he had possession and control of the vehicle, even if the rental agreement had expired.

The State counters the company, as the owner of the car, is not a third party and therefore had the right to consent to search its vehicle. The State contends any expectation of privacy defendant had in the vehicle ceased when he was lawfully arrested and, as such, was no longer viable when the company consented and the search was conducted. In support of its argument, the State relies on Fernandez v. California, 571 U.S. 292 (2014), which the motion judge also cited in support of his decision. The State's argument is unavailing.

In Fernandez, the defendant refused to consent to a protective sweep of his home when police appeared at his door after hearing "sounds of screaming and fighting" within. Id. at 295. He was arrested and brought to the police station on suspicion he had assaulted his girlfriend, who also appeared to be his co-tenant. Ibid. About an hour later, police returned to the premises and the co-tenant gave consent to search the apartment. Ibid. The United States Supreme Court held the co-tenant's consent was valid as against the defendant, reasoning "an occupant who is absent due to a lawful detention or arrest stands in the same shoes as an occupant who is absent for any other reason." Id. at 303.

A-5003-17T1

In Fernandez, both the defendant and his co-tenant had "jointly occupied" the apartment and thus had "common authority" over the premises. Id. at 300; see also United States v. Matlock, 415 U.S. 164, 171 n.7 (1974) (common authority rests "on mutual use of the property by persons generally having joint access or control for most purposes"). But, that joint occupation and resulting common authority did not exist in the present case.

Rather, the relationship between the rental car company and defendant was less like co-tenants and more akin to that of a landlord and tenant. Indeed, they did not share occupancy or actual possession of the vehicle: the rental company owned the car; defendant was the sole driver. Under that analogy, the company's authority to consent did not override defendant's. See State v. Wright, 221 N.J. 456, 475-76 (2015) (generally, a landlord has the right to enter a tenant's apartment under certain circumstances, but "does not have the authority to consent to a search of a tenant's private living space"); see also Cushing, 226 N.J. at 200.

Moreover, unlike the co-tenant in Fernandez, the rental company was not present at the scene on the day of the incident. Nor did the police here seek the owner's consent to search the vehicle within hours of the incident. Instead, three days lapsed between the stop and ultimate search.

Lastly, although not dispositive of the issue before us, the record does not support the trial judge's finding that the lease had expired, or had not been extended, at least de facto, at the time consent was sought from the rental car company. As such, we need not defer to that determination. See Dunbar, 229 N.J. at 538. In fact, the parties do not dispute that the rental agreement permitted extensions of the lease. Further, the record is devoid of any evidence that the company had demanded the car's return, see United States v. Lumpkins, 687 F.3d 1011, 1013 (9th Cir. 2013), or "attempted to repossess the car." United States v. Henderson, 241 F.3d. 638, 647 (9th Cir. 2001).

We therefore conclude defendant still had a reasonable expectation of privacy over the vehicle when it was searched three days after the stop. Accordingly, in view of the totality of the facts known to the police at the time of the search, it was not "objectively reasonable" to obtain consent from the car rental company. Suazo, 133 N.J. at 320.

In light of our decision, we need not reach defendant's remaining arguments. We simply add we agree with the motion judge that it would have been more prudent for police to have applied for a warrant to search the vehicle. Certainly, in the three days that transpired between the stop and search, there existed ample time to make that application.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5003-17T1