**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0232-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GARY NEAL, 2ND, a/k/a
GARY NEAL, III,
GEE NEAL, and GARY NEAL,

     Defendant-Appellant.

_____

> Submitted February 28, 2022 – Decided March 17, 2022
>
> Before Judges Messano and Rose.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 16-09-1208.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Douglas Helman and John P. Flynn, Assistant Deputy Public Defenders, of counsel and on the briefs).
>
> Mark Musella, Bergen County Prosecutor, attorney for respondent (Edward F. Ray, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress, defendant Gary Neal, 2nd, pled guilty to second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), and in exchange, the State recommended a five-year sentence with a forty-two-month period of parole ineligibility and dismissed the remaining counts of the indictment and motor vehicle violations.[1] The judge sentenced defendant in accordance with the plea agreement.

Before us, defendant raises the following point for our consideration:

> POINT I
>
> THE CONSENT EXTRACTED FROM NEAL DURING THE MOTOR VEHICLE STOP WAS INVALID. AT THE SUPPRESSION HEARING, THE JUDGE PROHIBITED TESTIMONY FROM NEAL'S WIFE THAT THE SIGNATURE ON THE CONSENT FORM WAS NOT NEAL'S, DENYING NEAL THE FULL OPPORTUNITY TO PRESENT HIS OWN DEFENSE. FURTHER, THE OFFICERS FAILED TO

---

[1] Defendant had earlier pled guilty to a different count of the indictment — first-degree possession of a handgun without a permit by a person having been previously convicted of an enumerated offense under the No Early Release Act, N.J.S.A. 2C:39-5(j). In exchange, the State agreed to recommend a ten-year sentence with five years of parole ineligibility and to dismiss the remaining counts and motor vehicle violations. Nearly eighteen months later, the State and defendant moved to vacate defendant's plea based on defendant's cooperation with the State. Defendant then entered a guilty plea to second-degree unlawful possession of a handgun pursuant to the restructured plea agreement noted above.

A-0232-19

ASK FOR MRS. NEAL'S CONSENT, DESPITE KNOWING THAT SHE WAS THE REGISTERED OWNER OF THE VEHICLE. AT THE VERY LEAST, THIS MATTER MUST BE REMANDED FOR A NEW HEARING.

Because the judge erroneously limited the testimony of defendant's wife, Sarah Neal, we agree a remand is necessary for the judge to consider her testimony in deciding if the State met its burden of proving defendant actually consented to the search of the vehicle. We reject defendant's contention that his purported consent to the search of the vehicle was invalid because Sarah was the titled owner of the car.

I.

Before any testimony at the hearing and knowing Sarah[2] was in court and prepared to testify on defendant's behalf, the prosecutor advised that the State objected to defense counsel asking Sarah if the signature on the consent-to-search form was her husband's. The prosecutor argued such testimony required an expert. Defense counsel proffered that she would only ask Sarah if "she recognize[d] her husband's signature." Citing N.J.R.E. 702, the judge agreed with the prosecutor this presented "a technical issue regarding specialized

---

[2] To avoid confusion, we refer to Sarah Neal by her first name throughout this opinion. We intend no disrespect by this informality.

A-0232-19

knowledge . . . as to whether . . . the signature on that document was . . . [defendant]'s or not." Based on this conclusion, the judge allowed Sarah to testify about her observations at the time of the search, but did not allow her to testify whether the signature on the consent-to-search form was defendant's.

The State's sole witness at the evidentiary hearing was Bergen County Sheriff's Officer Kevin Scarpa. Shortly after 4:00 a.m. on January 10, 2016, he stopped the car defendant was driving because it crossed the center line. Sarah was in the front passenger seat. When Scarpa first approached the vehicle, he detected a "heavy odor of raw marijuana and observed . . . a rolled marijuana cigarette in the back seat area and marijuana flakes on the floor and on [defendant]." Scarpa learned via a credentials check that Sarah owned the car and defendant's driver's license was suspended. Scarpa called for backup.

Scarpa testified he could see marijuana residue, a rolled-up "marijuana cigar" in the back seat area, and a large amount of currency in the console area. Defendant became nervous and admitted he had some marijuana, which he asked Sarah to hand over. Scarpa said she took a small bag of apparent marijuana from her "shirt area," gave it to defendant, who, in turn, gave it to Scarpa. Scarpa ordered defendant out of the vehicle, where he asked if there was anything else illegal in the car. Defendant responded there was a handgun. Scarpa asked if

4

defendant would be willing to sign a consent-to-search form, and defendant agreed, read the form and signed it in front of Scarpa's vehicle using the headlights for illumination.

During this time, Sarah was near the passenger side of the vehicle with Officer Cutrona,[3] one of the backup officers. Scarpa said there was a tree blocking his direct view of where they were standing. Although he knew Sarah owned the car, Scarpa did not ask her for consent. Upon searching the vehicle, Scarpa recovered the handgun from the pocket on the passenger side door, the marijuana cigar, and currency in the center console area. Scarpa placed defendant under arrest.

Sarah testified she and defendant were leaving a party, and, after dropping off two other people, two officers stopped the car. Although an officer said he noticed a strong odor of marijuana emanating from the car, Sarah testified she had asthma and did not smoke, and defendant did not smoke because he was on parole. However, Sarah heard defendant eventually tell the officer there might be a "small amount in the center console"; she denied ever having marijuana on her person. Police then ordered her and defendant to exit the vehicle, which they did.

---

[3] Officer Cutrona's first name is not provided in the record.

A-0232-19

Police separated Sarah and defendant, and she saw an officer "place[] [defendant] in handcuffs and br[ing] him back to the police vehicle" while she "stood under a big tree." Sarah never saw Scarpa and defendant talking in front of the police car, and she never spoke with Scarpa. At no point did Sarah see defendant sign a document that night, even though he was "in [her] view." Sarah testified "there[] [was] no way [defendant] could have signed a paper" because "there was no one to give him the paper[,]" as "both of the officers were by [her] vehicle."

There was no oral argument following the testimony, and the judge reserved decision. Both parties, however, submitted briefs prior to the hearing. The State argued the initial vehicle stop was lawful based on an observed traffic violation, and Scarpa properly obtained consent from defendant to search the vehicle. In a footnote citing State v. Witt, 223 N.J. 409 (2015), the State alternatively argued the search was proper under the automobile exception to the warrant requirement because the officers had probable cause to conduct a warrantless search of the vehicle.

Among other things, defendant argued the initial stop was a pretext, and, even if it were valid, the following inquiry and warrantless search and seizure were improper. Defendant contended any apparent authority he had to consent

6

to the search was invalid, because Sarah, the vehicle's owner, was present and police failed to obtain her consent.

In a written opinion, the judge found Scarpa was a credible witness, and, although Sarah's "testimony was consistent and she had a good recollection of her encounter with Officer Scarpa," the judge found the officer's testimony "more credible." The judge found there was a "reasonable and articulable suspicion" to stop the vehicle based on Scarpa's observation of a traffic violation. See, e.g., State v. Bacome, 228 N.J. 94, 103 (2017) ("To be lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed.'" (quoting State v. Carty, 170 N.J. 632, 639–40 (2002))).

Citing Carty, the judge concluded Scarpa had a reasonable and articulable suspicion to request defendant's consent to search the car. See 170 N.J. at 647 ("[C]onsent searches following a lawful stop of a motor vehicle should not be deemed valid . . . unless there is reasonable and articulable suspicion to believe that an errant motorist or passenger has engaged in, or is about to engage in, criminal activity."). The judge also found defendant "knowingly and voluntarily consented to the search." He rejected the argument that Sarah's consent was

necessary, citing State v. Suazo, 133 N.J. 315, 321 (1993). The judge entered an order denying defendant's motion to suppress.

## II.

"When an appellate court reviews a trial court's decision on a motion to suppress, the reviewing court defers to the trial court's factual findings, upholding them 'so long as sufficient credible evidence in the record supports those findings.'" State v. Nelson, 237 N.J. 540, 551 (2019) (quoting In re J.A., 233 N.J. 432, 445 (2018)). We defer to those factual findings in recognition of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). However, legal conclusions drawn from those facts are reviewed de novo. State v. Smith, 212 N.J. 365, 387 (2012) (citing State v. Handy, 206 N.J. 39, 45 (2011)).

In Suazo, the Court considered whether police obtained valid consent to search a red nylon clothes bag in the trunk of a car based on the driver's voluntarily executed consent-to-search form for the entire vehicle when the defendant-passenger claimed the bag was his. 133 N.J. at 317–18. The Court recognized

> A third party who possesses "common authority over or
> other sufficient relationship" to the property sought to

be inspected may consent to its search. That authority to consent arises from the "mutual use of the property by persons generally having joint access or control for most purposes . . . ."

A third party who possesses the authority to consent to a search of premises generally, however, may lack the authority to consent to a search of specific containers found on those premises.

[Id. at 320 (first quoting United States v. Matlock, 415 U.S. 164, 171 (1974); and then citing United States v. Block, 590 F.2d 535, 541 (4th Cir. 1978)).]

The Court cited cases from other jurisdictions that "concluded . . . because a driver has immediate possession of and control over the car, he or she may consent to its search." Id. at 321 (citations omitted); see also State v. Montesano, 298 N.J. Super. 597, 611 (App. Div. 1997) ("Ordinarily a driver has the authority to consent to the search of the vehicle unless there is evidence that suggests he/she does not have control over the vehicle." (citing State v. Maristany, 133 N.J. 299, 306 (1993); Suazo, 133 N.J. at 320–21)).

However, the Court held "[w]hen circumstances suggest that the property to be searched belongs to someone other than the consenting party, the validity of the third-party consent becomes questionable." Suazo, 133 N.J. at 322. "Absent evidence to suggest that [the] defendant was aware of his right to object

to the search of the red bag," the Court was "unwilling to equate [the] defendant's silence with a knowing waiver of a constitutional right." Id. at 323.

On the same day that Suazo was decided, the Court reached a different result in Maristany. There, police obtained the written consent of the driver to search the vehicle's trunk and two pieces of luggage in the trunk. 133 N.J. at 302. They found cocaine in the luggage, and both the driver and the defendant-passenger were charged. Id. at 302–03. The driver subsequently denied any knowledge of the contents of the luggage. Id. at 303.

The Court noted: "Appearances of control at the time of the search, not subsequent determinations of title or property rights, inform our assessment of the officer's conduct." Id. at 305 (citing State v. Santana, 215 N.J. Super. 63, 71 (App. Div. 1987)). Rejecting the argument that the officers were required to obtain the defendant's consent to search the bags, the Court held, "Absent evidence that the driver's control over the car is limited, a driver has the authority to consent to a complete search of the vehicle, including the trunk, glove compartment, and other areas." Id. at 306.

In this case, defendant was obviously in control of the car when Scarpa effectuated the traffic stop. There was nothing to suggest defendant's control was limited in any way. As the Court said in Suazo, "[A]uthority to consent

arises from the 'mutual use of the property by persons generally having joint access or control for most purposes . . . ."  133 N.J. at 320 (quoting Matlock, 415 U.S. at 171 n.7).  Scarpa reasonably believed defendant had authority to consent to the search of the vehicle, and he was not required to obtain the consent of Sarah.

In Montesano, we rejected the defendant's claim that his consent to search a suitcase in the trunk of his rental car was invalid because he denied ownership of the luggage, which was loaded into the car by his co-defendant-passenger, and police should have obtained the consent of the co-defendant.  298 N.J. Super. at 603, 609–10.  We found the "[d]efendant's denial of ownership [wa]s unavailing, as it d[id] not constitute a limitation on his consent to search."  Id. at 611.  We also noted it was the defendant who now sought "to repudiate his own consent, not the passenger[, and] . . . the defendant's consent included authority to search the suitcase."  Id. at 612.

We acknowledge that none of these cases are on all fours with the facts presented here, and, that defendant has cited at least one out-of-state case that squarely held, "[w]here the known owner is present, the driver has only apparent, not actual, authority, and his consent is invalid as a matter of law."  Johnson v. State, 905 P.2d 818, 820 (Okla. Crim. App. 1995).  But other

11

jurisdictions have clearly held to the contrary.  See, e.g., United States v. Dunkley, 911 F.2d 522, 525–26 (11th Cir. 1990) (applying Matlock's "joint access or control" test and concluding the driver of a car had authority to consent even if the owner was present as a passenger); United States v. Morales, 861 F.2d 396, 399–400 (3d. Cir. 1988) (holding driver had authority to consent to search of car even though lessee was a passenger because he conferred power to consent on driver and never revoked or limited the consent).

We acknowledge defendant's contention that even when access or control is shared, it may be objectively unreasonable for police to rely on the consent of one party over objections of the other.  See State v. Coles, 218 N.J. 322, 338–39 (2014) (discussing the United States Supreme Court's holding in Georgia v. Randolph, 547 U.S. 103, 122–23 (2006), where a co-occupant of a residence was present and refused to give consent).  Nor can police avoid a potential objection by unlawfully restraining the other party.  Id. at 347 ("[V]alid third-party consent is subject to the exception that the third party's consent cannot be manufactured through the unlawful detention of the defendant." (citing Fernandez v. California, 571 U.S. 292 (2014))).  However, neither of those circumstances occurred here.

A-0232-19

There was no evidence that police unlawfully restrained or isolated Sarah to prevent her objection, or that she attempted to object. Sarah's testimony was that Scarpa never obtained defendant's consent. Moreover, the testimony regarding the signature on the consent-to-search form, which the judge prohibited, was logically intended to corroborate the claim that defendant never provided consent.

To the extent we have not otherwise addressed them specifically, defendant's contentions regarding the lack of his voluntary consent to the search of the car lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

However, the judge erred in ruling Sarah was unqualified to render an opinion whether the signature on the consent-to-search form was defendant's. It is, simply put, well-established that fact finders "are allowed to compare a known sample of a person's handwriting with the handwriting on a contested document" without expert testimony. State v. Haskins, 131 N.J. 643, 652 (1993) (citing State v. Carroll, 256 N.J. Super. 575, 597–98 (App. Div. 1992)); see also N.J.S.A. 2A:82-1 (permitting witnesses to compare signatures proven to be genuine with disputed signatures). The State's counter argument that defense counsel failed to actually introduce or authenticate the form is specious; it was

the prosecutor's pre-emptive objection that made any potential effort to have Scarpa authenticate the form (a copy of which is in the appellate record) a futile gesture.

We also reject the State's contention that potential testimony about whether the signature on the consent-to-search form was defendant's signature has no probative value. The State relied on the consent exception to the warrant requirement, and it bore the burden of proof. Scarpa was the State's sole witness, and therefore, defendant was entitled to challenge his testimony, including the assertion that defendant voluntarily executed the form using illumination from the police vehicle, while standing in the rain some distance away from his wife.

We therefore remand the matter to the trial court for a further evidentiary hearing at which Sarah shall be permitted to opine, if a proper foundation is laid regarding her familiarity with defendant's signature, whether the signature on the consent-to-search form is defendant's. The judge shall consider that testimony along with the other testimony already received and decide whether the State met its burden of proving defendant knowingly and voluntarily consented to the search of the car.

In addition, because the State sought to justify the search under the automobile exception with a brief citation to <u>Witt</u> in its opposition brief, the

14

judge shall permit the State to provide additional evidence justifying this exception to the warrant requirement if it chooses, or to argue the exception applies on the existing record. Defendant shall be permitted to respond to that alternative justification for the search if advanced by the State on remand.

Because the State never asserted the inevitable discovery exception to the warrant requirement applied before the trial judge, we see no reason why it should be permitted to assert this ground on remand. See State v. Robinson, 200 N.J. 1, 20 (2009).

Affirmed in part, remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION