SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## State v. Michael Cushing (A-68-14) (073925)

**Argued February 29, 2016 -- Decided August 3, 2016**

**LaVECCHIA, J., writing for a unanimous Court.**

At issue in this appeal is the validity of a third party's consent to search an adult household member's bedroom. The trial court denied defendant's motion to suppress the evidence seized as a result of the warrantless search. The Appellate Division reversed, concluding that the on-the-scene law enforcement officer had not obtained a valid authorization to enter and inspect items in defendant's bedroom and interior closet.

On June 24, 2011, Officer Ziarnowski of the Bridgewater Township Police Department responded to a telephone call from a person reporting suspected marijuana found in a single-family residence within the township. Ziarnowski went to the address provided and Lisa Mylroie answered the door and invited him in. She identified herself as the person who called the police and told the officer that the house belonged to her eighty-five-year-old mother, Betty Cushing, who was not home at the moment. Mylroie explained to Ziarnowski that she was at the house that day to remove from the premises her mother's twenty-six-year-old grandson, Michael Cushing, who had been living with his grandmother for twenty years. Mylroie told Ziarnowski that she had power of attorney over her mother's household affairs. But she did not provide proof of such authority, and Ziarnowski did not ask for it. Mylroie told Ziarnowski that defendant had failed to pay rent and had moved his girlfriend into his bedroom. Mylroie's sister, Charlene Cushing, was also present in the home. Ziarnowski did not question her; however, she is reported by Ziarnowski to have nodded in agreement during Mylroie's statements to him.

Mylroie stated that when she arrived at the house, defendant was not home. She decided to look around upstairs to see why her mother's electricity bill, which she paid on her mother's behalf, was unusually expensive. Mylroie told Ziarnowski that she entered defendant's upstairs bedroom and observed a bright light shining from beneath the door to the room's interior closet. Mylroie opened the door and saw several plants that she believed to be marijuana. She then called the police. After Mylroie provided that information, she led Ziarnowski upstairs to defendant's bedroom. There, once Mylroie opened the closet door, Ziarnowski saw the plants she had described, with grow lights above them. He stated that he believed at the time that the plants were marijuana plants. Ziarnowski said he did not touch or move the plants; instead, he returned downstairs, secured the residence, and called his supervisor to inform him of the need to apply for a search warrant.

After Officer Ziarnowski left to obtain a search warrant, Betty Cushing returned home. Another officer presented her with a consent-to-search form, which she signed to authorize a search of the yard and entire house -- except for defendant's bedroom. Betty told the officer seeking her consent that she could not consent to search defendant's room because it was <u>his</u> room. Approximately an hour later, Officer Ziarnowski returned with a search warrant. In executing the search warrant, police seized from defendant's bedroom sixteen marijuana plants, several five-gallon buckets used to hold the plants, ventilation units, and drug paraphernalia. Officers also seized a Ziploc bag of marijuana that was discovered in a backyard shed.

On August 31, 2011, defendant was indicted on charges of first-degree maintaining a controlled dangerous substance (CDS) production facility, second-degree possession of marijuana with intent to distribute ten or more but less than fifty marijuana plants, second-degree possession of marijuana with intent to distribute within 500 feet of a public park, third-degree possession of marijuana with intent to distribute within 1000 feet of school property, and fourth-degree failure to notify law enforcement of a change of employment as required under Megan's Law. Defendant filed a motion to suppress the evidence found in his bedroom. The court framed the question as whether a "non-resident attorney[-]in[-]fact ha[s] the legal authority to consent to a search of premises owned and occupied by her principal[,]" and whether consent was valid in this instance. The court determined that Mylroie's power of attorney granted her that authority and that the police had a reasonable basis to rely on it. After denying defendant's motion to suppress, the court sentenced him to an aggregate sentence of ten years' imprisonment with a forty-month parole disqualifier.

Defendant appealed, arguing that Mylroie lacked actual or apparent authority to give consent to enter and search his bedroom. The Appellate Division agreed and reversed, focusing for the most part on the lack of actual authority by Betty Cushing to have consented to a search of defendant's bedroom. The panel concluded that because Betty Cushing lacked actual authority, Mylroie could not possess derivative authority to consent to the search.

The State also advanced before the Appellate Division its alternative basis for sustaining the search under the independent-source doctrine. However, the panel declined to apply the doctrine in the first instance, noting that the trial court had not sufficiently addressed the argument. In remanding the matter, the panel ordered the trial court to address whether the independent-source doctrine applies under the circumstances.

The Supreme Court granted the State's petition for certification. 222 N.J. 311 (2015).

**HELD:** The record contains ample evidence to support the Appellate Division's conclusion that Betty Cushing did not have actual authority to consent to the search of defendant's room, and Betty could not have conferred through any power of attorney an authority that she did not possess herself. In addition, it was not objectively reasonable for Officer Ziarnowski to rely on an apparent authority by Mylroie as the basis for valid third-party consent to his initial search of defendant's bedroom.

1. The search of a home raises heightened privacy concerns. The United States Supreme Court has recognized, however, that in certain circumstances a third party -- a person other than the defendant -- can validly consent to a search of the defendant's home. Also, in recognition of the many factual settings that confront a law enforcement agent, an officer may, depending on the circumstances, rely on the apparent authority of a person consenting to a search. This Court also applies, under the State Constitution, the consent exception to third parties who possess actual authority based on their common use of the space searched. See State v. Suazo, 133 N.J. 315, 319-20 (1993). Furthermore, even when the third party does not possess actual authority to consent to a search, this Court has recognized that evidence seized during such a search need not be suppressed under the State's constitutional requirements if the "officer's belief that the third party had the authority to consent was objectively reasonable in view of the facts and circumstances known at the time of the search." State v. Coles, 218 N.J. 322, 340 (2014) (quoting Suazo, supra, 133 N.J. at 320). (pp. 12-15)

2. The question whether an expectation of privacy existed here is easily resolved. Defendant had a clear privacy expectation in his room, which both he and his grandmother recognized. Authority to consent to search a particular area of a home turns on common usage, and Betty Cushing's evident lack of common use of defendant's bedroom and her recognition of his exclusive control of that space meant that only defendant possessed the ability to consent to a search of his bedroom and interior space. The record contains ample evidence to support the Appellate Division's conclusion that Betty Cushing did not have actual authority to consent to the search of defendant's room. There is no need to address whether Mylroie had actual authority to consent to the search of defendant's room by virtue of an asserted power of attorney because Betty could not have conferred through any power of attorney an authority that she did not possess herself. (pp. 15-18)

3. The standard for determining whether a police officer may rely on a third party's apparent authority is whether the officer's belief at the time was objectively reasonable. That standard is not satisfied in this case based on the proofs presented at the suppression hearing. Although there is no reason to question the officer's good faith when interacting with Mylroie at the house, the Court cannot conclude that the officer's belief that Mylroie had authority to consent to entry and inspection of defendant's bedroom was objectively reasonable. Third parties derive authority from common and joint use of space. That requirement calls for careful scrutiny when applied to parties who are not the homeowners yet are purporting to authorize consent to search the bedroom of an adult in the home in which he resides. Here, the officer failed to ask adequate questions at the scene before he followed Mylroie into defendant's room and then peered into his closet. Officer Ziarnowski could not have relied on an apparent authority by Mylroie as the basis for valid third-party consent to his initial search of defendant's bedroom. The Court further agrees with the Appellate Division that this matter requires remand for the trial court to address whether the independent-source doctrine applies under the circumstances. (pp. 18-21)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.**

2

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

MICHAEL CUSHING,

    Defendant-Respondent.

Argued February 29, 2016 – Decided August 3, 2016

On certification to the Superior Court, Appellate Division.

Emily R. Anderson, Deputy Attorney General, argued the cause for appellant (John J. Hoffman, Acting Attorney General of New Jersey, attorney).

James K. Smith Jr., Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney).

Ronald K. Chen argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Edward L. Barocas, Legal Director, attorney; Mr. Chen, Mr. Barocas, Jeanne M. LoCicero and Alexander R. Shalom, of counsel and on the brief).

    JUSTICE LaVECCHIA delivered the opinion of the Court.

    At issue in this appeal is the validity of a third party's consent to search an adult household member's bedroom. The trial court denied defendant's motion to suppress the evidence

seized as a result of the warrantless search; however, the Appellate Division reversed, concluding that the on-the-scene law enforcement officer had not obtained a valid authorization to enter and inspect items in defendant's bedroom and interior closet. We granted the State's petition for certification and now affirm the Appellate Division judgment.

I.

Defendant Michael Cushing was indicted on five counts: first-degree maintaining a controlled dangerous substance (CDS) production facility, N.J.S.A. 2C:35-4 (count one); second-degree possession of marijuana with intent to distribute ten or more but less than fifty marijuana plants, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(10)(b) (count two); second-degree possession of marijuana with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1 (count three); third-degree possession of marijuana with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7 (count four); and fourth-degree failure to notify law enforcement of a change of employment as required under Megan's Law, N.J.S.A. 2C:7-2(d)(1) (count five).

After the trial court conducted a hearing and denied defendant's motion to suppress evidence seized from his bedroom in his grandmother's home where he resided, defendant negotiated a plea agreement. Defendant entered a conditional plea of

2

guilty to counts two through five in exchange for the dismissal of count one. The trial court sentenced defendant in accordance with the plea agreement. On appeal, the Appellate Division reversed on the issue of suppression. Now, at the State's request that we review this matter, we summarize the facts developed in connection with the suppression motion, at which Officer Michael Ziarnowski testified.

On June 24, 2011, Officer Ziarnowski of the Bridgewater Township Police Department responded to a telephone call from a person reporting suspected marijuana found in a single-family residence within the township. According to Ziarnowski, he went to the address provided and Lisa Mylroie answered the door and invited him in. She identified herself as the person who called the police and told the officer that the house belonged to her eighty-five-year-old mother, Betty Cushing, who was not home at the moment. Mylroie told him that her mother was "at a neighbor's house." Mylroie's sister, Charlene Cushing, was also present in the home. Ziarnowski did not question her, as far as the transcript reveals; however, she is reported by Ziarnowski to have nodded in agreement during Mylroie's statements to him.

Mylroie explained to Ziarnowski that she was at the house that day to remove from the premises her mother's twenty-six-year-old grandson, Michael Cushing, who had been living at the house. Her mother was not there, as Mylroie explained, because

3

the family thought it best that she not be present when that was done. Mylroie told Ziarnowski that she had power of attorney over her mother's household affairs. But she did not provide proof of such authority, and Ziarnowski did not ask for it.

According to Ziarnowski, Mylroie told him that defendant, who had been living with his grandmother for twenty years, had failed to pay rent, had moved his girlfriend into his bedroom, and generally did not help around the house. For those reasons, Mylroie said Betty Cushing no longer wanted her grandson to live with her.

Mylroie's explanation to Ziarnowski continued. She stated that, when she arrived at the house, defendant was not home. She decided to look around upstairs to see why her mother's electricity bill, which she paid on her mother's behalf, was unusually expensive. Mylroie told Ziarnowski that she entered defendant's upstairs bedroom and observed a bright light shining from beneath the door to the room's interior closet. Mylroie opened the door and saw several plants that she believed to be marijuana. She then called the police.

Ziarnowski testified that, after Mylroie provided that information, she led him upstairs to defendant's bedroom. He followed her up the stairs and, arriving at the corridor of the upstairs floor, made a sharp right and joined Mylroie inside defendant's bedroom. There, once she opened the closet door, he

4

saw the plants Mylroie had described, with grow lights above them. He stated that he believed at the time that the plants were marijuana plants. Ziarnowski said he did not touch or move the plants; instead, he returned downstairs, secured the residence, and called his supervisor to inform him of the need to apply for a search warrant.

After Officer Ziarnowski left to obtain a search warrant, Betty Cushing returned home. Another officer, who was on the backup team that had arrived at the house, presented her with a consent-to-search form, which she signed to authorize a search of the yard and entire house -- except for defendant's bedroom. According to Ziarnowski's testimony, Betty told the officer seeking her consent that she could not consent to search defendant's room because it was his room. Approximately an hour later, Officer Ziarnowski returned with a search warrant. In executing the search warrant, police seized from defendant's bedroom sixteen marijuana plants, several five-gallon buckets used to hold the plants, ventilation units, and drug paraphernalia. Officers also seized a Ziploc bag of marijuana that was discovered in a backyard shed.

On August 31, 2011, a Somerset County grand jury indicted defendant on the five counts previously identified.

Defendant filed a motion to suppress the evidence found in his bedroom. He did not seek suppression of the marijuana found

in the backyard shed. A hearing was conducted and a written opinion was issued by the trial court. The court framed the question as whether a "non-resident attorney[-]in[-]fact ha[s] the legal authority to consent to a search of premises owned and occupied by her principal[,]" and whether consent was valid in this instance. In denying defendant's motion to suppress, the court determined that Mylroie's power of attorney granted her "the authority to consent to the entry of the police into [d]efendant's bedroom on behalf of [Betty Cushing]" and "provided the police with a reasonable basis to rely on [] Mylroie's authority." The trial court rejected defendant's argument that his relationship to Betty Cushing was that of landlord-tenant and instead concluded that the relationship was "that of common family household members." According to the trial court, Officer Ziarnowski had a good faith, reasonable belief that Mylroie had actual authority to consent, even though the power of attorney was not produced at any time.

After denying defendant's motion to suppress, the court sentenced defendant, in accordance with the plea agreement, to an aggregate sentence of ten years' imprisonment with a forty-month parole disqualifier.

Defendant appealed, arguing that Mylroie lacked actual or apparent authority to give consent to enter and search his bedroom. He emphasized that Mylroie's authority could not rise

6

above the actual authority possessed by Betty Cushing. The Appellate Division agreed and reversed in an unpublished decision, focusing for the most part on the lack of actual authority by Betty Cushing to have consented to a search of defendant's bedroom.

The panel began by noting its agreement with the trial court that defendant was not Betty Cushing's tenant but rather more like her child. In that regard, the panel pointed to facts, as found by the trial court, that supported that defendant was not in a tenant relationship: he was twenty-six-years old, he had lived with his grandmother since he was a child, and he had never paid rent. With respect to the familial relationship between Betty and her grandson, the Appellate Division noted that Betty herself had declined consent to search his bedroom, evidencing that she recognized that he had privacy expectations to that space. In fact, it was the only space that she excluded from the areas of her home and yard that she allowed to be searched pursuant to the consent-to-search form that she executed at police request. More critical for the panel was its conclusion that, based on the record, Betty Cushing did not have authority to consent to a search of defendant's bedroom or, more pointedly, his closet, based on evidence of common access and usage. Thus, the panel determined that Betty did not provide any solid link for finding a valid

7

third-party consent to search defendant's room and interior spaces.

Accordingly, the Appellate Division reversed the trial court's denial of the motion to suppress without addressing whether Mylroie possessed authority to allow the police to view defendant's bedroom or closet by virtue of her power of attorney for her mother. The panel concluded that because Betty Cushing lacked actual authority to consent to the search, Mylroie could not possess derivative authority to consent to the search.

The State also advanced before the Appellate Division its alternative basis for sustaining the search under the independent-source doctrine. Specifically, the State contended that Mylroie's observations alone, conveyed to the responding officer, constituted sufficient probable cause for the issuance of a search warrant. However, the panel declined to apply the doctrine in the first instance, noting that the trial court had not sufficiently addressed the argument. In remanding the matter, the panel ordered the trial court to address whether the independent-source doctrine applies under the circumstances.[1]

---

[1] The Appellate Division opinion states that "if defendant prevails and the evidence is suppressed, defendant's guilty pleas shall be vacated." However, as noted, the record indicates that police recovered a large Ziploc bag of marijuana from the shed, which Betty Cushing authorized to be searched. We presume that the Appellate Division did not intend its ruling to affect evidence that was not sought to be suppressed and that the trial court correctly noted should not be suppressed.

8

Unrelated to this appeal, the Appellate Division also ordered a resentencing of defendant to correct an error regarding defendant's eligibility for a statutory mandatory minimum period of parole ineligibility and for reconsideration of defendant's sentence on the second-degree possession with intent to distribute charge.

We granted the State's petition for certification on the validity of the third-party consent to search. State v. Cushing, 222 N.J. 311 (2015). We also granted amicus curiae status to the American Civil Liberties Union of New Jersey (ACLU-NJ).

II.

A.

The State maintains that Betty Cushing had actual authority to consent to the search of defendant's room, which flowed to Mylroie through her power of attorney. The State also contends that Mylroie had apparent authority as well, on which the police reasonably relied under the circumstances.

The State first focuses on why Betty Cushing had the authority to consent to a search of defendant's room. Because the trial court found, and the appellate panel agreed, that defendant and Betty Cushing's relationship was one akin to parent-child and not landlord-tenant, the State relies on the line of cases recognizing parents' ability to authorize searches

9

of rooms of children who live with them. And in such settings, the State argues that the Appellate Division erred in equating defendant's closet to a closed container in which there is a greater privacy expectation. According to the State, defendant did not pay rent and Betty Cushing had the ability to authorize a search of his bedroom.

The State relies on the principle that third parties can give valid consent to search a private dwelling so long as the party has actual authority to do so. Because the State believes that Betty Cushing had authority to consent to a search of defendant's room in her home, it contends that Mylroie, as Betty's agent, could exercise that same power. Pointing to Mylroie's power of attorney, which included paying the bills and handling Betty Cushing's household affairs, the State argues that Mylroie had actual authority to consent.

The State also argues, alternatively, that Mylroie had apparent authority, on which the police reasonably relied at all times. Specifically, the State highlights, as reasonable, the police officer's belief that Mylroie held a power of attorney for her mother's household affairs, as she asserted, because Mylroie invited Officer Ziarnowski in, was familiar with the house, and described the familial situation in detail. Furthermore, Mylroie's sister -- Betty's other daughter, Charlene Cushing -- was also present, adding reasonable

10

verification of the information that Mylroie conveyed and on which the officer relied.

B.

Defendant primarily argues that Betty Cushing, and therefore Mylroie, did not have actual authority to consent to a search of defendant's bedroom because of the lack of common authority over the room. Emphasizing the importance of the lack of joint access and control, defendant asserts that he had an undoubted expectation of privacy in his bedroom. He points to several facts as evidence of that expectation: (1) defendant moved his girlfriend into the bedroom; (2) Betty Cushing told police that she did not freely go in and out of the bedroom; and (3) she authorized consent for the entire residence and premises except for defendant's bedroom. Those facts also support the broader context that defendant emphasizes, namely that he was a grown, independent adult and not a child. The totality of the circumstances, defendant argues, establishes an expectation of privacy in defendant's bedroom preventing Betty Cushing from consenting to its search. Because Betty Cushing had no actual authority to consent to the search, she could not confer actual authority to Mylroie through power of attorney.

Finally, defendant argues that the State could not provide a reasonable basis for a belief in Mylroie's apparent authority. According to defendant, apparent authority is inapposite in this

11

situation because the doctrine centers on mistaken beliefs about common residency or ownership. Here, defendant emphasizes, there was no mistake about Mylroie's status. She promptly told Officer Ziarnowski that she did not own or stay at the residence.

## C.

The ACLU-NJ reiterates defendant's arguments that Mylroie had neither actual nor apparent authority to authorize a search of defendant's room. The ACLU-NJ also references sociological considerations in cases of an adult child living with a parent, noting that there is a growing trend of multigenerational adults living together and that a large percentage of adult children currently live with a parent. The ACLU-NJ argues that members of that large swath of the population would have their privacy rights compromised, and therefore their Fourth Amendment rights implicated, were this Court to grant parents the same ability to consent to a search of any rooms or spaces used exclusively by their adult children living with them as may be done for their minor children. Failing to make such a distinction would ignore the different privacy expectations possessed by minor and adult children, according to the ACLU-NJ.

## III.

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect

12

against unreasonable searches.  Each guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7.

Homes are particularly protected spaces under those constitutional guarantees.  See State v. Lamb, 218 N.J. 300, 314 (2014) (noting that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed" (quoting State v. Vargas, 213 N.J. 301, 313 (2013))).  Therefore, home searches raise heightened privacy concerns.  State v. Edmonds, 211 N.J. 117, 129 (2012); see also State v. Evers, 175 N.J. 355, 384 (2003) (stating that privacy interest in home is "entitled to the highest degree of respect and protection in the framework of our constitutional system").

Because warrantless searches are presumptively unreasonable generally, and particularly when a home is involved, the State bears the burden of proving the validity of a warrantless search.  State v. Wright, 221 N.J. 456, 468 (2015).  To be valid, a warrantless search must fit into a recognized exception to the warrant requirement.  See State v. Watts, 223 N.J. 503, 513 (2015).

One well-recognized exception to the warrant requirement is consent.  Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.

13

Ct. 2041, 2043-44, 36 L. Ed. 2d 854, 858 (1973) (recognizing consent exception to requirements of probable cause and warrant under Fourth Amendment); State v. Domicz, 188 N.J. 285, 305 (2006) ("A search conducted pursuant to consent is a well-established exception to the constitutional requirement that police first secure a warrant based on probable cause before executing a search of a home.").  In a search of a home, the United States Supreme Court has recognized that, in certain circumstances, a third party -- a person other than the defendant -- can validly consent to a search of the defendant's home.  United States v. Matlock, 415 U.S. 164, 170-71, 94 S. Ct. 988, 992-93, 39 L. Ed. 2d 242, 249-50 (1974).  The third party's ability to consent to such a search rests on his or her "joint occupation" of and "common authority" over the premises.  Fernandez v. California, ___ U.S. ___, ___, 134 S. Ct. 1126, 1132-33, 188 L. Ed. 2d 25, 32-33 (2014); Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797, 111 L. Ed. 2d 148, 156 (1990).  Also, in recognition of the many factual settings that confront a law enforcement agent, an officer may, depending on the circumstances, rely on the apparent authority of a person consenting to a search.  Apparent authority arises when a third party (1) does not possess actual authority to consent but appears to have such authority and (2) the law enforcement officer reasonably relied, from an objective perspective, on

14

that appearance of authority. Rodriguez, supra, 497 U.S. at 185-89, 110 S. Ct. at 2800-02, 111 L. Ed. 2d at 159-61.

Our Court also applies, under the State Constitution, the consent exception to third parties who possess actual authority based on their common use of the space searched. See State v. Suazo, 133 N.J. 315, 319-20 (1993). Furthermore, even when the third party does not possess actual authority to consent to a search, our Court has recognized that evidence seized during such a search need not be suppressed under the State's constitutional requirements if the "officer's belief that the third party had the authority to consent was objectively reasonable in view of the facts and circumstances known at the time of the search." State v. Coles, 218 N.J. 322, 340 (2014) (quoting Suazo, supra, 133 N.J. at 320).

IV.

A.

Based on the evidence presented at the suppression motion, we readily agree with the trial court, and therefore the Appellate Division, that defendant was neither Betty Cushing's minor child nor her tenant. A landlord-tenant relationship would not have supported this search, in any event, because a landlord "generally does not have authority to consent to a search of a tenant's premises." State v. Coyle, 119 N.J. 194, 215 (1990) (citation omitted). With respect to a parent-child

15

relationship as a basis for evaluating the facts involving this search, the Appellate Division has recognized in the past the principle that a parent generally has the right to consent to a search of a minor child's room in the parent's home. See State v. Douglas, 204 N.J. Super. 265, 278-79 (App. Div.) (recognizing that "the overwhelming majority of the cases uphold the right of the parent to consent to a search of the son or daughter's room"), certif. denied, 102 N.J. 378 (1985). We note also that a panel of the Appellate Division has offered guidance on whether an adult child's room is subject to a parent's ability to consent to its search. See State v. Crumb, 307 N.J. Super. 204, 243-45 (App. Div. 1997) (providing factors to assess whether parent had authority to consent to search of adult child's room), certif. denied, 153 N.J. 215 (1998). But here we need not plumb the depths of that very fact-sensitive question centering on expectations of privacy between the primary parties because the question whether an expectation of privacy existed here is easily resolved. Defendant had a clear privacy expectation in his room, which both he and his grandmother recognized.

When asked for consent to search her home, Betty Cushing forthrightly told law enforcement that she did not go into defendant's room. Officer Ziarnowski testified that while on his way to apply for the search warrant, the officer at the

16

residence relayed to him Betty Cushing's statement that defendant solely occupied the bedroom and that she was not comfortable authorizing a search of the room.[2]  Based on those statements by Betty when she had returned to her home, which were relayed to Officer Ziarnowski prior to his application for a search warrant, it should have been plain to the officer that Betty regarded defendant as having exclusive possession of the room and that she did not believe she had, nor did she wish to exert, authority to consent to a search of his bedroom. Authority to consent to search a particular area of a home turns on common usage, and Betty Cushing's evident lack of common use of defendant's bedroom and her recognition of his exclusive control of that space meant that only defendant possessed the ability to consent to a search of his bedroom and interior space.  See State v. Maristany, 133 N.J. 299, 305 (1993) (noting that consent may come "from a third party who possesses common authority over the property"); Fernandez, supra, ___ U.S. at ___, 134 S. Ct. at 1132-33, 188 L. Ed. 2d at 32-33 (noting that authority to consent rests on "joint occupation" and "common authority").

---

[2] Because the officer to whom Betty made the statement did not testify, the exact language she used is unclear.  But Officer Ziarnowski acknowledged at the suppression hearing that he was told that Betty Cushing said defendant had exclusive possession of his bedroom, that she did not freely go in and out of the room, and that she would not consent to a search.

17

Further cementing the conclusion that Betty lacked actual authority to consent to a search of defendant's room based on her and defendant's expectation of defendant's privacy in that space, Betty authorized the search of her entire home and yard except for defendant's bedroom.  This record contains ample evidence to support the Appellate Division's conclusion that Betty Cushing did not have actual authority to consent to the search of defendant's room.  There is no need to address whether Mylroie had actual authority to consent to the search of defendant's room by virtue of an asserted power of attorney because Betty could not have conferred through any power of attorney an authority that she did not possess herself.

We now turn to whether, regardless of the lack of actual authority possessed by Betty, or derivatively by Mylroie, the search was valid pursuant to an objectively reasonable apparent authority by Mylroie conveyed to Officer Ziarnowski.

B.

The standard for determining whether a police officer may rely on a third party's apparent authority is whether the officer's belief at the time was objectively reasonable.  Suazo, supra, 133 N.J. at 320.  That standard is not satisfied in this case based on the proofs presented at the suppression hearing.  Although there is no reason to question the officer's good faith when interacting with Mylroie at the house, we cannot conclude

18

that the officer's belief that Mylroie had authority to consent to entry and inspection of defendant's bedroom was objectively reasonable.

Third parties derive authority from common and joint use of space. That requirement calls for careful scrutiny when applied to parties who are not the homeowners yet are purporting to authorize consent to search the bedroom of an adult in the home in which he resides. Here, Mylroie told Ziarnowski that she neither lived at the house nor owned it. At that point, Ziarnowski needed to establish a greater base of information than he did before following Mylroie up the stairs and into defendant's bedroom. He never asked for proof of the asserted power of attorney or took steps to investigate its breadth. He never inquired exactly where Betty was or whether she could return to the premises or even speak telephonically with him. The officer also had no base of knowledge from Mylroie about other people's access to defendant's room, generally, or for any specific purpose such as to clean it. Nor did he know about defendant's, or Betty's, expectations about privacy in respect of that space. He never asked. There was a failure to ask adequate questions at the scene before the officer followed Mylroie into defendant's room and then peered into his closet.

On this record, the Appellate Division correctly rejected the argument that the officer reasonably relied on Mylroie's

19

power of attorney over Betty's household affairs.  Mylroie described its ability to give her financial powers to assist her mother.  It was never produced, so we cannot verify its existence or scope.  That said, a power of attorney, assuming it would allow Mylroie to step into the shoes of Betty Cushing, would not circumvent analysis of this adult defendant's expectation of privacy to his bedroom in his residence.

Ziarnowski was obliged to ascertain information about the exclusivity of the use of, and access to, defendant's bedroom.  Prior to entering the bedroom, Ziarnowski did not know if Betty Cushing, or any other family member, went freely into defendant's room.  And some statements that Mylroie made to Ziarnowski should have alerted him that it appeared that defendant was maintaining exclusive control over the domain of his bedroom.  Mylroie told the officer that defendant had moved his girlfriend into the room.  That should have suggested to an objectively reasonable person that defendant had sufficient privacy and control over his bedroom to invite another person to live in it with him.  Ziarnowski did not even know whether defendant's bedroom door was open or whether Mylroie opened it in order to enter it, either the first time or when he followed her in.  The record has holes, which inure to the detriment of the State, for it is the State that bears the burden of proving the objective reasonableness of this warrantless search.

20

Ziarnowski did secure the premises, and he applied for a search warrant without seizing the marijuana plants.  But that does not change the objective reasonableness of his belief in Mylroie's apparent authority.  We hold that Ziarnowski could not have relied on an apparent authority by Mylroie as the basis for valid third-party consent to his initial search of defendant's bedroom.  We affirm that conclusion and judgment of the Appellate Division.

We further agree with the Appellate Division that this matter requires a remand.  Whether Ziarnowski could have obtained a search warrant independent of his observations from his entry into the home with Mylroie was not adequately addressed at the suppression hearing.  The State should be permitted to present, and have the trial court determine, the validity of its alternative independent-source theory in this matter.  We therefore affirm the Appellate Division's order of remand.

V.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.

21