# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0716-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANTHONY MIRANDA,

     Defendant-Appellant.

_____

Argued November 30, 2021 – Decided February 8, 2022

Before Judges Currier and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 19-10-1420.

James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; James K. Smith, of counsel and on the briefs).

Monica do Outeiro, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Lori Linskey, Acting Monmouth County Prosecutor, attorney; Monica do Outeiro, of counsel and on the brief).

PER CURIAM

Defendant, Anthony Miranda, appeals the July 1, 2020 order denying his motion to suppress. For the reasons set forth below, we affirm.

I.

On the morning of July 27, 2019, N.D. went to the Highlands Police Department to report that she was a victim of domestic violence. She informed Detective Nicholas Riker (Det. Riker) that she and defendant had been dating since September 2015 and that defendant turned violent towards her about a year after they moved in together. N.D. told Det. Riker that on March 27, 2019, defendant was physically violent towards her, and she suffered injuries as a result. N.D. showed Det. Riker photographs of the injuries and screenshots of threatening text messages she received from defendant. The messages from defendant read: "Im goin to kill u n ur whole scum family[,]" "U better give me the key to my mothers jeep or im gana blow ur kids n ur fukn mothers brains out then im coming for u," and "[t]hen ur nephew n ur whole fukn spick family."

N.D. informed Det. Riker that defendant had two firearms which he sometimes brandished to intimidate her and her children. N.D. described one of the firearms as a revolver and stated that defendant kept both guns in a black

2

drawstring bag in the closet behind the front door of the residence. N.D.'s adult children also gave statements to the police that morning.

N.D. spoke to a municipal court judge on the phone. Based on the information she provided, the judge telephonically issued a temporary restraining order[1] (TRO) and a search warrant to seize "two handguns within the residence, specifically in the closet behind the front door of the mobile home." The search warrant specified that the residence to be searched was a trailer located in Highlands.

At 10:58 a.m., Det. Riker and Captain George Roxby (Capt. Roxby) went to the residence. The events that transpired next were captured on Capt. Roxby's body worn camera.

Upon arriving, the officers immediately arrested defendant. Det. Riker then transported defendant to the Highlands Police Department for processing. Capt. Roxby remained at the scene and began searching the residence for the guns. Capt. Roxby was unable to locate the guns after an initial search of the trailer, so he asked N.D. to return to the scene. When N.D. arrived with her children, she assisted Capt. Roxby with the search.

---

[1] On August 5, 2019, a Family Division judge entered a final restraining order, prohibiting defendant from having contact with N.D.

N.D. became visibly distressed when they were unable to locate the guns in the residential trailer. Her children then mentioned to Capt. Roxby that some of their belongings were stored in another trailer nearby on the same street.

The group departed the residential trailer and went over to the storage trailer. Capt. Roxby confirmed with N.D. and her children that they stored their belongings there and were voluntarily consenting to a search. As he approached the entrance, Capt. Roxby observed that the screen door was closed, but the main door was ajar. "Almost immediately after entering, N.D., who was standing directly behind Capt. Roxby, stated, 'that's it, that's it.'" N.D. was referring to the black drawstring bag she had described to the police as the bag in which defendant kept the guns.

At 11:34 a.m., Capt. Roxby searched the black bag and found (1) a loaded Raven Arms .25 pistol; (2) a black firearms holster; (3) a box containing 44 rounds of .25 caliber ammunition; and (4) a Smith and Wesson .38 caliber revolver. Capt. Roxby asked N.D. which items in the storage trailer belonged to defendant. She pointed out that the belongings were a mix of her, her children's, and defendant's possessions.

On October 22, 2019, a Monmouth County grand jury indicted defendant for the following charges: (1) terroristic threats, N.J.S.A. 2C:12-3(a); (2)

4

receiving stolen property, N.J.S.A. 2C:20-7(a); and (3) certain persons not to have weapons, N.J.S.A. 2C:39-7b(1).

Defendant moved to suppress evidence and to sever certain counts in the indictment. Judge Marc C. LeMieux, J.S.C. conducted a hearing in which Capt. Roxby testified, and the State introduced evidence, including defendant's text messages, the TRO, and the body worn camera footage. The court made findings and granted the motion to sever, but it denied the motion to suppress.

Two weeks after unsuccessfully moving for leave to appeal, defendant pled guilty to second-degree unlawful possession of a weapon. On October 15, the court sentenced defendant to a five-year term of incarceration and dismissed the remaining charges. On appeal, defendant argues:

POINT I

BECAUSE THE POLICE WERE FULLY AWARE THAT DEFENDANT'S RELATIONSHIP WITH N.D. HAD ENDED MONTHS EARLIER IN A FLOOD OF BITTER ACCUSATIONS, CAPTAIN ROXBY COULD NOT HAVE REASONABLY BELIEVED THAT N.D. POSSESSED COMMON AUTHORITY TO CONSENT TO A SEARCH OF DEFENDANT'S TRAILER.

A. The Fact That N.D. May Have Had Stored Some Belongings In Defendant's Trailer Did Not Give Her Actual Authority To Consent To The Search (Raised Below)

A-0716-20

B. Given The Undisputed Evidence That Defendant's Relationship With N.D. Had Ended Months Earlier, Captain Roxby Could Not Reasonably Believe That N.D. Had Authority To Consent To A Search Of The Trailer (Raised Below)

C. Even Assuming That Capt. Roxby Reasonably Believed That N.D. Had Authority To Consent To A Search Of The Trailer, He Clearly Could Not Have Reasonably Believed That She Could Give Consent To Search The Black Bag, For Which There Was No Claim Of Joint Control (Not Raised Below)

## II.

"In reviewing a motion to suppress, an appellate court must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Handy, 206 N.J. 39, 44 (2011) (citing State v. Elders, 192 N.J. 224, 243 (2007)). An appellate court gives deference to those factual findings in recognition of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Elders, 192 N.J. at 243.

We will not disturb a lower court's determination unless it is "so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Gamble, 218 N.J. 412, 425 (2014) (quoting Elders, 192 N.J. at 244).

6

However, legal conclusions to be drawn from those facts are reviewed de novo. State v. Smith, 212 N.J. 365, 387 (2012).

III.

Defendant argues that the evidence should have been suppressed because the warrantless search of the storage trailer was unconstitutional. We disagree.

The critical issue before the motion court was whether N.D. "possessed common authority to validly consent or, in the alternative, whether Captain Roxby could reasonably believe . . ." that she did. The court found insufficient evidence to determine whether N.D. had actual authority over the storage trailer. But this did not end the inquiry because, as the court noted, "[e]ven if a person lacks the actual authority to consent, the search may nevertheless be valid if the third party had apparent authority to consent." See State v. Cushing, 226 N.J. 187, 199 (2016).

Apparent authority arises when "a third party (1) does not possess actual authority to consent but appears to have such authority and (2) the law enforcement officer reasonably relied, from an objective perspective, on that appearance of authority." Id. at 199-200. In other words, if, based on the facts and circumstances known to the officer at the time of the search, the officer reasonably (but erroneously) believes that a third party possesses the common

7

authority over the property to be searched, the officer's search based on that third party's consent is still permissible under the Fourth Amendment. See ibid.; State v. Coles, 218 N.J. 322, 340 (2014); State v. Suazo, 133 N.J. 315, 320 (1993).

Judge LeMieux found that while the investigation progression was "not the most desirable," Capt. Roxby was a credible witness because the camera footage, TRO, search warrant, and text messages corroborated his testimony.

The court relied in part on the assertions from N.D. and her children that they all stored belongings in the storage trailer. The court also noted that "[t]he reasonableness of [Capt.] Roxby's belief [wa]s bolstered by the fact that [the storage trailer] and the belongings therein were not well-protected." The "main door was unlocked and open[]" and "the guns were not protected by a lock or other security device, which would prevent others from accessing them." The judge found that the guns were "not carefully hidden[,]" that "the bag was in plain view of the entrance[,]" and that "[a]nyone who entered [the storage trailer] would [have been] able to find the bag and access the guns with ease." Based on these facts, the court concluded that defendant had a lower expectation of privacy with respect to his belongings in the storage trailer because "[b]y storing his belongings in a place and manner in which others had access, [d]efendant

assumed the risk that another individual would consent to a search." See U.S. v. Matlock, 415 U.S. 164, 170-71 (1974).

The motion court weighed the facts in the record and found that Capt. Roxby "reasonably believed that [N.D.] possessed common authority over the storage trailer at the time that he searched that property" and that even "if [his] belief was erroneous, the search was still lawful." As such, he denied defendant's motion to suppress the evidence from the storage trailer.

Defendant argues that Capt. Roxby could not have reasonably believed that N.D. could consent, relying on the fact the Capt. Roxby saw text messages that N.D. provided to the police, one of which read "it is over and has been for [quite] some time now." Defendant contends that this, taken together with other text messages that referenced him being "removed by the cops" and returning "the keys to his mother's Jeep", established that N.D. and defendant were no longer in a dating relationship, rendering Capt. Roxby's belief that she could consent "completely unreasonable." We reject this argument because it fails to consider the plethora of evidence in the record which was available to Capt. Roxby at the time of the search.

We accord substantial deference to the motion court's findings. The court had the "opportunity to hear and see the witnesses and to have the feel of the

A-0716-20

case, which a reviewing court cannot enjoy[;]" consequently on this record we find the motion court's conclusion is not "so clearly mistaken" or "so wide of the mark that the interest of justice demand[s] intervention." Elders, 192 N.J. at 244. Bearing our standard of review in mind, we find no error here. The court had ample evidence in the record to find Capt. Roxby's actions consistent with the principles of apparent authority.

IV.

Defendant argues for the first time on appeal that even if N.D. had authority to consent to the search of the storage trailer, she did not have authority to consent to the search of the bag. Although we may consider allegations of errors or omissions not brought to the trial judge's attention if it meets the plain error standard under Rule 2:10-2, we frequently decline to consider issues that were not raised below or not properly presented on appeal. Generally, unless an issue (even a constitutional issue) goes to the jurisdiction of the trial court or concerns matters of substantial public interest, we will ordinarily not consider it. See, e.g., State v. Jones, 232 N.J. 308, 321 (2018). See also Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 2:6-2 (2021).

Based on this standard, we need not consider defendant's newly raised argument that there was no justification for Roxby to go inside the bag in search

of the handguns.  For completeness, we briefly address the issue.  Now that we have concluded the trial court was correct in finding Capt. Roxby had apparent authority to search the storage trailer, it follows that we find his search of the black bag justified as well.  The guns were specifically described to be in the bag, and the search's objective was specific:  find the black bag and the weapons within it.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11