# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3113-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DARREN R. PIEPER,

    Defendant-Appellant.

_____

Submitted November 27, 2023 – Decided March 4, 2024

Before Judges Gilson and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Accusation No. 19-09-0287.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Renée M. Robeson, Hunterdon County Prosecutor, attorney for respondent (Tina M. DiFranco, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Darren Pieper appeals from an April 6, 2022 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

In July 2018, the Readington Township Police Department (Readington) conducted a search of defendant's home in response to a report from Virginia police concerning T.L., a missing juvenile from Virginia. The Virginia police believed T.L. was in Readington because the credit card history indicated packages in his name were delivered to an address in Flemington. Readington police went to that address, encountered defendant, and inquired about T.L. Defendant, however, denied knowing anyone by that name.

Three days later, T.L.'s father contacted Readington police and requested further investigation because additional packages had been sent to defendant's address. T.L.'s father also informed Readington officers that T.L. also used the name J.L. The officers returned to the home that same afternoon. Defendant denied knowing J.L. or that packages were received for anyone with that name. The officers left defendant's home and checked the location of J.L.'s cellphone, which indicated the cell phone was in the vicinity.

2

Several officers returned to the home and defendant's wife answered the door. When shown a picture of J.L., she confirmed that he was in the home. Defendant then came to the door and confirmed J.L. was sleeping in the basement. J.L. was returned to his family.

In May 2019, J.L. went missing again. The Virginia police again contacted the Readington police and requested a welfare check at defendant's home. Several officers returned to defendant's home and spoke with defendant's wife. After explaining to her that J.L. was missing, she consented to a search of the home.

As the officers were searching defendant's home, defendant was seen exiting the detached garage on the property. The officers told defendant that J.L. was missing and believed to be on the property. Defendant acknowledged that he had been in contact with J.L., and he had previously stayed at defendant's home. Yet, defendant claimed that he was unable to recall the last time J.L. stayed at his home and claimed that he was unable to contact J.L. Defendant consented to a search of the detached garage, which produced teenager's clothing, a wallet containing a debit card belonging to someone with J.L's last name, and a pack of birth control pills. The officers read defendant his Miranda[1]

---

[1] Miranda v. Arizona, 384 U.S. 436, 444 (1996).

rights and asked additional questions regarding J.L's whereabouts. Defendant eventually admitted J.L. was on the property and messaged J.L. that the police were there to help him.

As defendant was being questioned, other officers looked through the windows of several vehicles parked in an open area within 300 feet of defendant's detached garage. J.L. was found in a van when an officer saw a foot sticking out from underneath a seat and ordered J.L. out of the van. Defendant was arrested and his cellphone was seized from his person pursuant to a search incident to arrest.

Defendant was subsequently charged with third-degree interference with custody, N.J.S.A. 2C:13-4(a)(1); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); fourth-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3b(4); fourth-degree obstructing the administration of law, N.J.S.A. 2C:29-1a; and the disorderly persons offense for providing alcoholic beverages to underage person, N.J.S.A. 2C:33-17a.

The next day on May 14, 2019, defendant's wife signed a Hunterdon County Prosecutor's Office (HCPO) consent to search form, providing consent to search the basement, barn, and outside buildings on their property. The consent to search form stated that she had the rights to refuse consent, to

withdraw consent at any time, and to be present during the search. Defendant's wife declined to be present and informed the officers that she and defendant had been married for nineteen years but had been living separate lives for several years and did not share a bedroom.

HCPO and Readington officers searched defendant's property the same day. They found money and a black cellphone on the nightstand in a basement bedroom shared by defendant and J.L. Defendant's wife later told the officers that the black cellphone was defendant's second cellphone. The officers also found an empty cellphone box and three USB storage drives. The search of the detached garage revealed lubricant, condoms, empty alcohol containers, an iPad in a black leather case, an android cellphone in a green case, and an envelope containing money.

Readington Detective Brown applied for and was granted a communications data warrant (CDW) to access and search the electronic devices seized on May 13 and 14. A forensic examination of the cellphone found in the basement bedroom revealed thirteen images of child sexual abuse material. Also, a video of child pornography was found on both the cellphones seized from defendant's person and on the phone recovered from the basement room. The video depicted an adult male engaging in a sexual act with a prepubescent

5

boy. Defendant was then charged with third-degree endangering the welfare of a child. Further examination of the cellphone seized from defendant's person revealed that defendant had engaged in sexually explicit conversations with multiple male juveniles and a video of defendant engaging in sexual activity with a male juvenile.

On June 14, 2019, Detective Brown applied for and was granted a search warrant for defendant's home and another CDW, which were executed three days later. The State and defendant dispute how the warrant was executed. Defendant asserts the officers used a battering ram to enter the home and the State contends that officers knocked on the door and defendant's spouse granted entry into the home. Nevertheless, the officers recovered multiple tablets, cellphones, laptops, laptop backups, USB storage sticks, defendant's passport, and various tapes and audio recordings from the basement, garage, and a vehicle in the garage. A forensic examination of the electronic devices revealed defendant had communicated with multiple male juveniles using different computers and cellphone applications regarding the sexual activity that had occurred between defendant and the juveniles, as well as the exchange of photos of defendant's and the male juveniles' genitalia.

6

The male juveniles identified in the conversations with defendant were interviewed by the officers. T.M., then twenty at the time of his interview, told officers he met defendant online through a dating application and had engaged in sexual activity five or six times with defendant when he was fifteen or sixteen years old. Officers identified two other male juveniles under the age of sixteen that also engaged in sexual activity with defendant. Defendant was subsequently charged with three counts of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4), and three counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4a.

On September 26, 2019, defendant entered a guilty plea to one count of second-degree sexual assault pursuant to the negotiated plea agreement. Defendant testified that he met with plea counsel on "at least seven occasions" while in jail, he was provided with and reviewed the discovery the State intended to use at trial, he reviewed the possible defenses, and he discussed the State's initial plea offer and proposed counteroffer with counsel. Specifically, defendant admitted the day before the plea hearing, he met with plea counsel and reviewed the waiver and accusation, Megan's Law registration, community supervision for life, and was provided an explanation regarding the adult

A-3113-21

diagnostic treatment evaluation, and how it could determine or affect defendant's placement in prison.

In a colloquy with the court, defendant iterated that he had sufficient time to speak with counsel, he was satisfied with his services, he reviewed all the plea documents with counsel, and counsel had answered his questions. Defendant testified that he understood that he was pleading guilty to second-degree sexual assault and understood the State's recommendation was a seven-year sentence. After the plea colloquy, the court accepted his guilty plea.

On January 24, 2020, defendant was sentenced to a seven-year term consistent with the plea agreement. The court rejected defense counsel's request for consideration of mitigating factor two and seven, explaining that based on the "totality of the circumstance" defendant "intended to meet with and engage in sexual acts" with young boys, went to "great lengths" to form those relationships, "prey[ed] on [their] weaknesses," and continued contact from the time that he was charged through incarceration. The court ultimately concluded defendant "did not fully understand that [his] conduct was wrong."

Defendant did not file a direct appeal. Instead, defendant filed a timely pro se PCR petition claiming ineffective assistance of counsel. Thereafter, appointed PCR counsel filed an amended PCR petition.

8

After hearing oral argument on April 6, 2022, the PCR court denied defendant's PCR petition in a comprehensive written opinion and corresponding order. Based on the record, the court concluded defendant failed to satisfy the Strickland/Fritz test. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987). The court found that both the plea colloquy and defendant's certification filed in support of the PCR petition "demonstrated that [trial counsel] met his professional obligation." The court stated the plea colloquy "undercut" defendant's arguments concerning his review of discovery and defendant's satisfaction with plea counsel's services. The court concluded that trial counsel engaged with defendant "exactly how a competent defense attorney" would be expected to act and did not fall below an objective standard of reasonableness.

The court considered the second prong of Strickland that there was a "reasonable probability" that but for trial counsel's errors he would not have pleaded guilty. The court similarly determined defendant's submissions "undercut" that argument. Specifically, defendant "did not state 'definitely' that with more time, he would have refused the plea, and he [did] not present any evidence to demonstrate that he would have done so." The court concluded defendant did not provide evidence to support his claim and did not make a

9

strong claim that he would have done anything different. Nor did defendant demonstrate that it would have been reasonable for him to reject the State's plea.

The court rejected defendant's reliance on State v. Cushing, 226 N.J. 187 (2016), and concluded each of the searches were lawful and a motion to suppress would have been "unsuccessful." Regarding the May 13 search, the court found the officers received "valid consent" to search the defendant's home and the garage both from defendant's wife and defendant. The search behind the garage was pursuant to a valid exception to the warrant requirement and defendant's cell phone was seized pursuant to a valid search incident to the arrest. As to the May 14 search, the court concluded the officers conducted a valid search based on the "reasonable conclusion" that defendant's wife had authority to consent to the search because she resided on the property. Lastly, the June 17 search was likewise valid because it was issued "pursuant to a warrant properly issued by a detached and neutral magistrate."

Finally, the court concluded defense counsel's performance during sentencing was reasonable because counsel's choices were a matter of "sound trial strategy." The court further concluded there was no prejudice to defendant because he had the opportunity to "speak up" at sentencing and he was sentenced in accordance with the plea agreement.

10

Defendant raises the following arguments on appeal:

POINT I

DEFENDANT RAISED PRIMA FACIE CLAIMS FOR POST-CONVICTION RELIEF WHICH ENTITLED HIM TO AN EVIDENTIARY HEARING.

A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS FOR INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY HEARINGS[,] AND PETITIONS FOR POST-CONVICTION RELIEF.

B. PLEA COUNSEL WAS INEFFECTIVE FOR FAILING TO CHALLENGE THE SEARCHES OF DEFENDANT'S RESIDENCE.

C. PLEA COUNSEL WAS INEFFECTIVE FOR FAILING TO ADEQUATELY INVESTIGATE THE CASE AND COMMUNICATE WITH HIS CLIENT.

D. [PLEA] COUNSEL WAS INEFFECTIVE FOR PROVIDING DEFENDANT WITH MISINFORMATION ABOUT THE TERMS AND CONSEQUENCES OF THE PLEA.

E. [PLEA] COUNSEL WAS INEFFECTIVE FOR FAILING TO ARGUE MITIGATING FACTORS AT THE SENTENCING HEARING.

We conduct a de novo review of a PCR court's legal conclusions and factual determinations rendered without an evidentiary hearing. State v. Harris, 181 N.J. 391, 421 (2004); State v. Aburoumi, 464 N.J. Super. 326, 338-39 (App. Div. 2020). Accordingly, we "view the facts in the light most favorable to the

defendant." State v. Jones, 219 N.J. 298, 311 (2014); see also State v. Chau, 473 N.J. Super. 430, 443 n.7 (App. Div. 2022).

It is well-settled that to establish a claim of ineffective assistance of counsel, a defendant must demonstrate by a preponderance of the evidence the reasonable likelihood that his claim will ultimately succeed on the merits under the two-pronged test set forth in Strickland, 466 U.S. at 687 and Fritz, 105 N.J. at 58. A failure to satisfy either prong of the Strickland standard requires the denial of a PCR petition. State v. Nash, 212 N.J. 518, 542 (2013); Fritz, 105 N.J. at 52.

Under the first prong of Strickland, a defendant must show that counsel's performance was deficient and "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Under the second prong, a defendant must demonstrate that his counsel's errors prejudiced the defense to the extent that the defendant was deprived of a fair and reliable trial outcome. Id. at 687. Bare assertions are "'insufficient to support a prima facie case of ineffectiveness.'" State v. Blake, 444 N.J. Super. 285, 299, (App. Div. 2016) (quoting State v. Cummings, 321 N.J. Super. 154, 171 (App. Div. 1999)).

12

When asserting an ineffective assistance of counsel claim after the entry of a guilty plea, "a defendant must show that (i) counsel's assistance was not within the range of competence demanded of attorneys in criminal cases; and (ii) that there is a reasonable probability that but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial." State v. Nunez-Valdez, 200 N.J. 129, 139 (2009) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994) (alteration in original)) (quotations omitted).

"An ineffective assistance of counsel claim may occur when counsel fails to conduct an adequate pretrial investigation." State v. Porter, 216 N.J. 343, 352 (2013). Our Supreme Court has held that "'counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" State v. Chew, 179 N.J. 186, 217 (2004) (quoting Strickland, 466 U.S. at 691).

A court reviewing a PCR petition based on claims of ineffective assistance has the discretion to grant an evidentiary hearing if a defendant establishes a prima facie showing in support of the requested relief. State v. Preciose, 129 N.J. 451, 462 (1992). The mere raising of a claim for PCR does not entitle a defendant to an evidentiary hearing. Cummings, 321 N.J. Super. at 170, certif. denied, 162 N.J. 199 (1999).

A-3113-21

We affirm the order denying defendant's PCR petition substantially for the reasons set forth in the PCR court's comprehensive written decision. Defendant argues plea counsel was ineffective by not challenging the searches of his property. Defendant makes this argument even though he consented to the search on May 13, his wife consented to the search on May 14, and a judge signed the CDW warrant. Moreover, the PCR court concluded a motion to suppress would have been "unsuccessful" because each of the searches were lawful.

Defendant next argues that his counsel did not afford him enough time to review discovery, that his confinement limited his access to resources that would have aided his defense, and that his counsel did not adequately explain the consequences of a guilty plea. We are not persuaded. We agree with the PCR court that defendant's arguments are "undercut" by the extensive colloquy with plea counsel and the trial court. Defendant's bald assertion that if he had more information, he might have refused the State's offer is insufficient to establish a prima facie case of ineffective assistance of counsel.

We also conclude there is not merit to defendant's argument that plea counsel was ineffective for failing to assert mitigating factors at the sentencing hearing. In its opinion, the PCR court acknowledged the sentencing

14

memorandum submitted by counsel requesting the sentencing judge consider mitigating factors two and seven. The PCR court found defense counsel presented a persuasive written argument supplemented with oral argument at sentencing. Nevertheless, the PCR court rejected those arguments and determined mitigating factors two and seven were not applicable. Having reviewed the record, we agree with the PCR court that defendant did not present evidence to rebut the presumption that defense counsel wrote the sentencing memorandum based on sound strategy, resulting in competent representation.

We discern no abuse of discretion in the PCR court's decision to deny an evidentiary hearing. Since defendant has failed to establish a prima facie claim in support of ineffective assistance of counsel or any other basis to support the holding of a hearing, the PCR court correctly determined he was not entitled to an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION